IN THE CIRCUIT COURT OF ARKANSAS COUNTY, ARKANSAS
NORTHERN DISTRICT
CIVIL DIVISION

CASE NO. CV-2013-040ND

RICELAND FOODS, INC.,

    PLAINTIFF,

VS.

GRAY, RITTER & GRAHAM, P.C.; DON M. DOWNING;
GRANT & EISENHOFER P.A.; ADAM J. LEVITT;
WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLC;
WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP;
NEBLETT BEARD & ARSENAULT, LLP; RICHARD J. ARSENAULT;
LOOPER REED & MCGRAW, P.C.; WILLIAM CHANEY;
DAVIS, BETHUNE & JONES, L.L.C.; GRANT L. DAVIS;
EMERSON POYNTER LLP; SCOTT E. POYNTER;
SEEGER WEISS LLP; STEPHEN A. WEISS;
WHATLEY, DRAKE & KALLAS, LLC; JOE R. WHATLEY, JR.;
CHAPMAN, LEWIS & SWAN, PLLC; RALPH E. CHAPMAN;
HARE, WYNN, NEWELL & NEWTON, LLP;
and SCOTT A. POWELL,

    DEFENDANTS.

**FILED**

*Natalie*

OCT 18 2013

TIME: 1:23pm

SARAH MERCHANT, CIRCUIT CLERK
ARKANSAS COUNTY, ARKANSAS
NORTHERN DISTRICT

## ANSWER AND COUNTERCLAIM

Defendants Gray, Ritter & Graham, P.C., Don M. Downing, Adam J. Levitt, Wolf

Haldenstein Adler Freeman & Herz LLC, Wolf Haldenstein Adler Freeman & Herz

LLP, Neblett Beard & Arsenault LLP, Richard J. Arsenault, Looper Reed & McGraw,

P.C., and William Chaney, Davis, Bethune & Jones L.L.C., Grant L. Davis, Hare, Wynn,

Newell & Newton, LLP, and Scott A. Powell (collectively, "Non-Disclaiming

Defendants") offer this answer to Plaintiffs' Complaint:

1

1.     Non-Disclaiming Defendants admit that Riceland is an agricultural cooperative organized under the laws of the state of Arkansas with its principal place of business in Stuttgart, Arkansas and is a citizen of the State of Arkansas. The remaining allegations in paragraph 1 of the Complaint are denied.

2.     With respect to the allegations contained in paragraph 2, Gray, Ritter, & Graham (GRG) admits that it is a professional corporation engaged in the practice of law with its principal place of business at 701 Market Street, St. Louis, Missouri 63101, that it was incorporated in the State of Missouri, that in 1992 it registered to do business in the State of Arkansas with the Arkansas Secretary of State with the address of 1920 Main Street in North Little Rock, Arkansas, that it states on its website that it represents clients in Arkansas, that it has represented Arkansas rice farmers in the GMO Rice Litigation, that a lawyer from the firm attended a portion of one day each of the *Schafer* and *Riceland* trials, that a lawyer in the firm attended meetings in Arkansas related to the GMO Rice Litigation, that lawyers from the firm have directed telephone calls, e-mails, and other correspondence into Arkansas pertaining to the GMO Rice Litigation, that Mr. Downing participated in the deposition of Carl Brothers in Arkansas, that Mr. Sapp participated in the deposition of Ronnie Helms in Arkansas, and that the firm moved to intervene in certain cases in Arkansas related to the GMO Rice Litigation. The remaining allegations in this paragraph constitute legal conclusions to which no response is required.  To the extent a response is required, the allegations are denied. The allegations of this paragraph do not apply to the remaining Non-Disclaiming

Defendants and thus an answer is not required.  To the extent an answer is required, the remaining Non-Disclaiming Defendants state that they lack sufficient knowledge or information to form a belief about the truth or falsity of the allegations, and therefore deny the allegations.

3.      With respect to the allegations contained in paragraph 3, Downing admits that he is an attorney, principal and Vice President of GRG, that he is a citizen of the State of Missouri, that he was appointed Co-Lead Counsel in *In Re Genetically Modified Rice Litigation*, that he is part of the Rice MDL Leadership Group, that he is a signatory to the MDL Settlement Agreement, that his firm has represented Arkansas rice farmers in the GMO Rice Litigation and that he has provided legal services as an attorney in the firm, that his firm has intervened in certain cases in Arkansas, that he sought and obtained *pro hac vice* admission in the *Meins* case as an attorney in the firm, that he attended as an attorney in the firm a portion of one day each of the *Schafer* and *Riceland* trials, that he attended as an attorney in the firm the deposition of Carl Brothers in Arkansas related to the GMO Rice Litigation, that as an attorney in the firm he directed telephone calls, emails, letters and other correspondence into the State of Arkansas pertaining to the subject of the GMO Rice Litigation.  To the extent not expressly admitted, the allegations of paragraph 3 are denied.  The allegations of this paragraph do not apply to the remaining Non-Disclaiming Defendants and thus an answer is not required.  To the extent an answer is required, the remaining Non-Disclaiming Defendants state that they lack sufficient knowledge or information to form a belief

about the truth or falsity of the allegations, and therefore deny the allegations.

4.      With respect to the allegations in paragraph 4, Levitt admits that Grant & Eisenhofer P.A. is a professional association incorporated under the laws of the State of Delaware with its principal place of business at 123 Justison Street, Wilmington, Delaware 19801. Levitt admits that Grant & Eisenhofer is a citizen of the State of Delaware. Levitt avers that the nature and extent of any business transacted by Grant & Eisenhofer in the state of Arkansas has been mooted by Grant & Eisenhofer's dismissal from this action. Levitt denies that Grant & Eisenhofer transacts business in Arkansas on an active, continuous and systematic basis, but admits that Grant & Eisenhofer has some dealings with clients who reside in Arkansas. Levitt admits that he is a Director of Grant & Eisenhofer. Levitt admits that, prior to joining Grant & Eisenhofer, he undertook work in Arkansas in conjunction with the GMO Rice Litigation. Levitt attended only part of the opening statements of the *Meins* trial and Levitt has not personally attended any other portion of those trials, hearings, or depositions from those proceedings. Other than as expressly admitted in this paragraph, the allegations of paragraph 4 are denied. The allegations of this paragraph do not apply to the remaining Non-Disclaiming Defendants and thus an answer is not required. To the extent an answer is required, the remaining Non-Disclaiming Defendants state that they lack sufficient knowledge or information to form a belief about the truth or falsity of the allegations, and therefore deny the allegations.

5.      With respect to the allegations contained in paragraph 5, Wolf

4

Haldenstein Adler Freeman & Herz LLP (Wolf LLP) admits it is a limited liability partnership engaged in the practice of law with its principal place of business at 270 Madison Avenue, 10th Floor, New York, NY 10016; and its partners are citizens of New York, New Jersey, Connecticut, and California. The remaining allegations in paragraph 5 constitute legal conclusions to which no response is required. To the extent a response is required, the allegations are denied. The allegations of this paragraph do not apply to the remaining Non-Disclaiming Defendants and thus an answer is not required. To the extent an answer is required, the remaining Non-Disclaiming Defendants state that they lack sufficient knowledge or information to form a belief about the truth or falsity of the allegations, and therefore deny the allegations.

6.      With respect to the allegations contained in paragraph 6, Wolf Haldenstein Adler Freeman & Herz LLC (Wolf LLC) is a limited liability company engaged in the practice of law with its principal place of business located at 55 West Monroe Street, Suite 1111, Chicago, Illinois 60603; and its members are citizens of New York, New Jersey, Connecticut, California and Illinois. The remaining allegations in paragraph 6 constitute legal conclusions to which no response is required. To the extent a response is required, the allegations are denied. The allegations of this paragraph do not apply to the remaining Non-Disclaiming Defendants and thus an answer is not required. To the extent an answer is required, the remaining Non-Disclaiming Defendants state that they lack sufficient knowledge or information to form a belief about the truth or falsity of the allegations, and therefore deny the allegations.

7.      With respect to the allegations contained in paragraph 7, it is admitted that a unity of interest and ownership exists between Wolf LLP and Wolf LLC; both entities use the same website under the Wolf LLP name; and some members of Wolf LLC are listed as partners of Wolf LLP on the firms' website.  The remaining allegations in paragraph 7 are denied or constitute legal conclusions to which no response is required.   To the extent a response is required, the allegations are denied.   The allegations of this paragraph do not apply to the remaining Non-Disclaiming Defendants and thus an answer is not required.  To the extent an answer is required, the remaining Non-Disclaiming Defendants state that they lack sufficient knowledge or information to form a belief about the truth or falsity of the allegations, and therefore deny the allegations.

8.      With respect to the allegations in paragraph 8, Wolf LLP and Wolf LLC admit that two of the principals from one or both entities participated in meetings in Arkansas; directed phone calls, emails and correspondence into Arkansas pertaining to the subject matter of this litigation.  In addition, one or two of the principals from one or both entities have attended Arkansas state court GMO Rice Litigation trials, participated in hearings, and have obtained information, transcripts and exhibits from those proceedings.  One or both entities moved to intervene in multiple LLRICE cases pending in Arkansas state courts, including *Meins, Sims,* and *Kyle,* and pursued the claim in *Kyle* to the Arkansas Supreme Court.  Wolf LLP and Wolf LLC both deny that either transacts business in Arkansas on an active, continuous and systematic basis and

that either represents any Arkansas long-grain rice farmers in the GMO Rice Litigation. To the extent not expressly admitted, the allegations of paragraph 8 are denied. The allegations of this paragraph do not apply to the remaining Non-Disclaiming Defendants and thus an answer is not required. To the extent an answer is required, the remaining Non-Disclaiming Defendants state that they lack sufficient knowledge or information to form a belief about the truth or falsity of the allegations, and therefore deny the allegations.

9.       With respect to the allegations in paragraph 9, Levitt admits that he is a citizen of the State of Illinois. Levitt admits that he is a Director of Grant & Eisenhofer and that, prior to joining Grant & Eisenhofer, Levitt was a member of Wolf LLP and a shareholder of Wolf LLC. Levitt resigned from both Wolf entities effective January 25, 2013. To the extent the Secretary of State still maintains a listing of Levitt as a shareholder of Wolf LLC, that is incorrect and Wolf is taking immediate steps to correct that error. Levitt admits he is part of the MDL Leadership Group and is a ginatory to the MDL Settlement Agreement. Levitt denies the characterization that he "represents numerous Arkansas clients, including many Arkansas farmers." Levitt represents on Arkansas farmer in the Rice Litigation and presently represents Lonoke County, Arkansas in unrelated litigation. Levitt admits that in his capacity as Plaintiffs' Co-Lead Counsel in the GMO Rice Litigation, and while he was a partner of Wolf Haldenstein, he appeared and filed pleadings in the *Kyle, Sims, and Meins* actions, likely was admitted *pro hac vice* in the Meins and Kyle actions, moved to intervene into the *Meins*

action, appeared and orally argued the motion to intervene before this Court in Stuttgart, Arkansas, and attended opening arguments in the Riceland trial. Levitt admits that in his capacity as Plaintiffs' Co-Lead Counsel in the GMO Rice Litigation, and while he was a partner of Wolf Haldenstein, he participated in several hearings relating to intervention, unjust enrichment, and common benefit issues in the state of Arkansas, but denies that the characterization of those proceedings as "LLRICE hearings conducted in Arkansas state courts." Levitt admits that in his capacity as Plaintiffs' Co-Lead Counsel in the GMO Rice Litigation, and while he was a partner of Wolf Haldenstein, he directed a small number of telephone calls, emails and other correspondence into the state of Arkansas relating to the above-referenced intervention, unjust enrichment, and common benefit issues. The remaining allegations in paragraph 9 are denied or constitute legal conclusions to which no response is required. To the extent a response is required, the allegations are denied. The allegations of this paragraph do not apply to the remaining Non-Disclaiming Defendants and thus an answer is not required. To the extent an answer is required, the remaining Non-Disclaiming Defendants state that they lack sufficient knowledge or information to form a belief about the truth or falsity of the allegations, and therefore deny the allegations.

10.     With respect to the allegations contained in paragraph 10, Neblett, Beard & Arsenault (NBA) admits that it is a limited liability company engaged in the practice of law located at 2220 Bonaventure Court, Alexandria, Louisiana, 71301; its partners are citizens of Louisiana; it has directed a relatively small number of phone calls, emails

and other correspondence into Arkansas; it moved to intervene or intervened in GMO Rice Litigation in Arkansas in the *Meins, Sims,* and *Kyle* cases; and was involved in the *Kyle* case through the Arkansas Supreme Court. NBA denies that it transacts business in Arkansas on an active, continuous and systematic basis; and that it represented Arkansas long-grain rice farmers in the GMO Rice Litigation. The remaining allegations in paragraph 10 are denied or constitute legal conclusions to which no response is required. To the extent a response is required, the allegations are denied. The allegations of this paragraph do not apply to the remaining Non-Disclaiming Defendants and thus an answer is not required. To the extent an answer is required, the remaining Non-Disclaiming Defendants state that they lack sufficient knowledge or information to form a belief about the truth or falsity of the allegations, and therefore deny the allegations.

11. With respect to the allegations contained in paragraph 11, Arsenault admits he is an attorney and partner in NBA; he is a member of the MDL Leadership Group and signatory to the MDL Settlement Agreements, he appeared and filed pleadings in multiple Arkansas state court cases including *Kyle, Sims,* and *Meins*; he attempted to intervene in *Meins* on behalf of himself, NBA and the MDL Leadership Group; he directed a relatively small number of calls, emails and other correspondence into Arkansas on this subject matter. The remaining allegations in paragraph 11 are denied. The allegations of this paragraph do not apply to the remaining Non-Disclaiming Defendants and thus an answer is not required. To the extent an answer is

required, the remaining Non-Disclaiming Defendants state that they lack sufficient knowledge or information to form a belief about the truth or falsity of the allegations, and therefore deny the allegations.

12.     With respect to the allegations contained within paragraph 12 of the complaint, Looper Reed & McGraw, P.C. (LRM) admits that it is a professional corporation engaged in the practice of law with offices in Houston, Dallas and Tyler, Texas with a principal place of business at 1300 Post Oak Blvd, Suite 2000, Houston, Texas 77056 and that it is a citizen of Texas.  LRM denies that it transacts business in Arkansas on an active, continuous, and systematic basis.   LRM admits that it represented long-grain rice farmers who were in the GMO Rice Litigation.  LRM denies that principals of LRM have actively participated in meetings in Arkansas, and have directed telephone calls, e-mails, and other correspondence into Arkansas pertaining to the subject matter of this litigation.  LRM admits that principals and other attorneys from LRM have attended one or more of the Arkansas state court GMO Rice Litigation trials, hearings, or depositions and have obtained information, transcripts and exhibits from those hearings.  LRM admits that William Chaney and Drew York of LRM participated in the November 2, 2009 deposition of Keith Glover, CEO of Producers Rice Mill, Inc., via videoconference from St. Louis, Missouri.  LRM admits that William Chaney and Drew York attended portions of the *Meins* trial before this Court, but deny that LRM purposely availed itself of Arkansas law and the Arkansas judicial system. LRM admits that it has appeared as a party or moved to intervene on its own behalf in

multiple GMO Rice Litigation cases pending in Arkansas state courts, including *Meins*, *Sims*, and *Kyle* and that LRM pursued its claim in the *Kyle* case all the way to the Arkansas Supreme Court.   To the extent not expressly admitted, the allegations of paragraph 12 are denied.   The allegations of this paragraph do not apply to the remaining Non-Disclaiming Defendants and thus an answer is not required.   To the extent an answer is required, the remaining Non-Disclaiming Defendants state that they lack sufficient knowledge or information to form a belief about the truth or falsity of the allegations, and therefore deny the allegations.

13.    With respect to the allegations contained within paragraph 13 of the complaint, William Chaney (Chaney) admits that he is an attorney shareholder of LRM, that he is a citizen of the State of Texas, that he is a part of the MDL Leadership Group, that he is a signatory to the MDL Settlement Agreement, that his firm represented Arkansas rice farmers who were in the GMO Rice Litigation, that he appeared and filed pleadings in the *Kyle, Sims,* and *Meins* cases, that in *Meins*, LRM attempted to intervene to assert a claim on behalf of itself and others who are part of the MDL Leadership Group, that he attended one or more GMO Rice Litigation trials or hearings conducted in Arkansas state courts, and that he participated in the November 2, 2009 deposition of Keith Glover, CEO of Producers Rice Mill, Inc. via videoconference from St. Louis, Missouri.   Chaney denies that he directed numerous telephone calls, emails, and other correspondence into the State of Arkansas pertaining to the subject matter of this litigation.   To the extent not expressly admitted, the allegations of paragraph 13 are

denied.   The allegations of this paragraph do not apply to the remaining Non-Disclaiming Defendants and thus an answer is not required.   To the extent an answer is required, the remaining Non-Disclaiming Defendants state that they lack sufficient knowledge or information to form a belief about the truth or falsity of the allegations, and therefore deny the allegations.

14.    With respect to the allegations contained in paragraph 14, Davis, Bethune & Jones, L.L.C. admits that it is a limited liability company practicing law at 1100 Main Street, Suite 2930, Kansas City, MO  64105; its members are citizens of Kansas and Missouri, it transacts business in Arkansas, it has represented clients in Arkansas state courts including Arkansas long-grain rice farmers in the GMO Rice Litigation; it filed three lawsuits against Bayer and Riceland in Arkansas State Courts related to GMO Rice Litigation; it and Grant Davis represented famer plaintiffs in the *Schafer* case; its principals have participated in trials, hearings and depositions and other meetings in Arkansas and have directed calls, emails and other correspondence into Arkansas pertaining to this litigation; its principals and attorneys have attended Arkansas state court GMO Rice Litigation trials and obtained information, transcripts and exhibits; it has appeared as a party or moved to intervene on its own behalf in GMO Rice Litigation cases in Arkansas, however it denies that *Meins* is one of those cases; and that it was involved in *Kyle* through the Arkansas Supreme Court.   The remaining allegations in paragraph 14 are denied or constitute legal conclusions to which no response is required.   To the extent a response is required, the allegations are denied.

The allegations of this paragraph do not apply to the remaining Non-Disclaiming Defendants and thus an answer is not required. To the extent an answer is required, the remaining Non-Disclaiming Defendants state that they lack sufficient knowledge or information to form a belief about the truth or falsity of the allegations, and therefore deny the allegations.

15.     With respect to the allegations contained in paragraph 15, Davis denies that he or Davis, Bethune & Jones attempted to intervene in the *Meins* case. Davis further denies that he is part of the MDL Leadership group. The remaining allegations are admitted. The allegations of this paragraph do not apply to the remaining Non-Disclaiming Defendants and thus an answer is not required. To the extent an answer is required, the remaining Non-Disclaiming Defendants state that they lack sufficient knowledge or information to form a belief about the truth or falsity of the allegations, and therefore deny the allegations.

16.     The allegations contained in paragraph 16 of the Complaint do not apply to Non-Disclaiming Defendants and thus an answer is not required. To the extent an answer is required, Non-Disclaiming Defendants state that they lack sufficient knowledge or information to form a belief about the truth or falsity of the allegations in paragraph 16.

17.     The allegations contained in paragraph 17 of the Complaint do not apply to Non-Disclaiming Defendants and thus an answer is not required. To the extent an answer is required, Non-Disclaiming Defendants admit that Poynter is an attorney and

member of the MDL Leadership Group, and further state that they lack sufficient knowledge or information to form a belief about the truth or falsity of the remaining allegations in paragraph 17.

18.     The allegations contained in paragraph 18 of the Complaint do not apply to Non-Disclaiming Defendants and thus an answer is not required.  To the extent an answer is required, Non-Disclaiming Defendants admit that Seeger Weiss is a limited liability partnership law firm, and further state that they lack sufficient knowledge or information to form a belief about the truth or falsity of the remaining allegations in paragraph 18.

19.     The allegations contained in paragraph 19 of the Complaint do not apply to Non-Disclaiming Defendants and thus an answer is not required.  To the extent an answer is required, Non-Disclaiming Defendants admit that Weiss is an attorney and member of the MDL Leadership Group, and further state that they lack sufficient knowledge or information to form a belief about the truth or falsity of the remaining allegations in paragraph 19.

20.     The allegations contained in paragraph 20 of the Complaint do not apply to Non-Disclaiming Defendants and thus an answer is not required.  To the extent an answer is required, Non-Disclaiming Defendants admit that Whatley Drake is a limited liability company law firm, and further state that they lack sufficient knowledge or information to form a belief about the truth or falsity of the allegations in paragraph 20.

21.     The allegations contained in paragraph 21 of the Complaint do not apply

to Non-Disclaiming Defendants and thus an answer is not required. To the extent an answer is required, Non-Disclaiming Defendants admit that Whatley is an attorney and member of the MDL Leadership Group, and further state that they lack sufficient knowledge or information to form a belief about the truth or falsity of the allegations in paragraph 21

22. The allegations contained in paragraph 22 of the Complaint do not apply to Non-Disclaiming Defendants and thus an answer is not required. To the extent an answer is required, Non-Disclaiming Defendants admit that Chapman Lewis is a professional limited liability company law firm, and further state that they lack sufficient knowledge or information to form a belief about the truth or falsity of the allegations in paragraph 22.

23. The allegations contained in paragraph 23 of the Complaint do not apply to Non-Disclaiming Defendants and thus an answer is not required. To the extent an answer is required, Non-Disclaiming Defendants admit that Chapman is an attorney and member of the MDL Leadership Group, and further state that they lack sufficient knowledge or information to form a belief about the truth or falsity of the allegations in paragraph 23.

24. Hare Wynn admits the allegations contained in paragraph 24 as to Hare Wynn. The allegations of this paragraph do not apply to the remaining Non-Disclaiming Defendants and thus an answer is not required. To the extent an answer is required, the remaining Non-Disclaiming Defendants state that they lack sufficient

15

knowledge or information to form a belief about the truth or falsity of the allegations, and therefore deny the allegations.

25.     With respect to the allegations contained in paragraph 25, Powell denies that he is currently appearing before this Court in the *Alter* lawsuit.  The remaining allegations in paragraph 25 are admitted as to Powell.  The allegations of this paragraph do not apply to the remaining Non-Disclaiming Defendants and thus an answer is not required.   To the extent an answer is required, the remaining Non-Disclaiming Defendants state that they lack sufficient knowledge or information to form a belief about the truth or falsity of the allegations, and therefore deny the allegations.

26.     The allegations contained in the first sentence of paragraph 26 of the Complaint constitute a legal conclusion to which no response is required.  To the extent a response is required, Non-Disclaiming Defendants deny the allegations. Non-Disclaiming Defendants deny the remaining allegations of paragraph 26.

27.     The allegations contained in paragraph 27 of the Complaint constitute legal conclusions to which no response is required.  To the extent a response is required, Non-Disclaiming Defendants deny the allegations of paragraph 27 of the Complaint.

28.     Hare Wynn and Powell admit the allegations of paragraph 28 as to Hare Wynn and Powell.

Wolf LLP and Wolf LLC admit that they have represented clients in litigation in Arkansas courts.  Wolf LLP and Wolf LLC admit that one or both entities appeared and filed pleadings in the *Kyle, Sims, and Meins* actions, moved to intervene into the *Kyle,*

*Sims, and Meins* actions and that one of their attorneys appeared and argued the motion to intervene before this Court.  That same attorney attended opening arguments in the *Meins* trial.   Wolf LLP and Wolf LLC also admit that two attorneys participated in hearings related to intervention, unjust enrichment and common benefit issues. Wolf LLP and Wolf LLC admit that attorneys directed some telephone calls, emails and other correspondence into the state of Arkansas relating to the above-referenced intervention, unjust enrichment, and common benefit issues.   The remaining factual allegations contained in paragraph 28 are denied as to Wolf LLP and Wolf LLC.

Levitt admits his limited involvement with Arkansas as outlined in paragraphs 4 and 9, but otherwise denies the allegations of paragraph 28.

NBA and Arsenault admit limited involvement with Arkansas as outlined in paragraphs 10 and 11, but otherwise deny the allegations of paragraph 28.

LRM and Cheney admit involvement with Arkansas as outlined in Paragraphs 12 and 13, but otherwise deny the allegations of paragraph 28 directed to them.

GRG and Downing admit that they represented clients from Arkansas in litigation pending in Missouri, that they attended and participated in depositions in the LLRICE Litigation in Arkansas, that they directed telephone calls, emails, letters and other correspondence into Arkansas related to litigation pending in Missouri, that they intervened in litigation pending in Arkansas, and that Downing attended opening arguments in the *Meins* trial.   The remaining factual allegations contained in paragraph 28 of the Complaint are denied as to GRG and Downing.

The allegations regarding purposeful availment, continuous and systematic contacts and jurisdiction constitute legal conclusions to which no response is required. To the extent a response is required, Non-Disclaiming Defendants deny these and all other allegations not specifically admitted.

29.     The allegations contained in paragraph 29 of the Complaint constitute a legal opinion to which a response is not required.  To the extent a response is required, Non-Disclaiming Defendants deny the allegations contained in paragraph 29 of the Complaint.

30.     Non-Disclaiming Defendants are without sufficient information to admit or deny the allegations contained in paragraph 30 of the Complaint, therefore they are denied.

31.     The allegations contained in the first sentence of paragraph 31 of the Complaint constitute Plaintiff's short-hand characterization of its allegations, to which no responsive pleading is required.  To the extent a response is required, it is denied. Non-Disclaiming Defendants admit the allegations in the second sentence of that paragraph.

32.     Non-Disclaiming Defendants admit the allegations contained in paragraph 32 of the Complaint.

33.     Non-Disclaiming Defendants admit the allegations contained in paragraph 33 of the Complaint.

34.     Non-Disclaiming Defendants admit the allegations contained in

paragraph 34 of the Complaint.

35.     Non-Disclaiming Defendants admit the allegations contained in in the first sentence of paragraph 35 of the Complaint.  The allegations contained in the second sentence of that paragraph constitute Plaintiff's short-hand characterization of its allegations, to which no responsive pleading is required.  To the extent a response is required, it is denied.

36.     Non-Disclaiming Defendants deny the allegations contained in paragraph 36 of the Complaint as stated.   Non-Disclaiming Defendants admit that other individuals or entities, including Louisiana State University and Jacko Garrett, were named as defendants in some, but not all, actions in the LLRICE Litigation.  NBA and Arsenault deny that they named any parties other than Bayer (as defined in paragraph 31 of the Complaint) and Louisiana State University as defendants in any LLRICE Litigation action that they filed.  LRM and Chaney admit that they named Louisiana State University and Jacko Garrett as defendants in some LLRICE Litigation actions originally filed in Texas and Louisiana.  Remaining Non-Disclaiming Defendants deny that they named any parties other than Bayer (as defined in paragraph 31 of the Complaint) as defendants in any LLRICE Litigation action that they filed.

37.     With respect to the allegations contained in paragraph 37 of the Complaint, Non-Disclaiming Defendants admit that Riceland was named as a defendant in some LLRICE cases, that many such cases were filed in Arkansas state court, and that Riceland filed suit against Bayer.  Non-Disclaiming Defendants are

without sufficient information to admit or deny the remaining allegations of paragraph 37 of the Complaint, and therefore they are denied.

38.     Non-Disclaiming Defendants admit the allegations contained in paragraph 38 of the Complaint.

39.     Non-Disclaiming Defendants deny the allegation that Riceland "vigorously defended itself" as written as a non-factual subjective phrase and also to the extent it implies that Riceland did not obtain, use and rely on work performed by others, including Non-Disclaiming Defendants, in its defense and claims against Bayer. The remaining allegations contained in paragraph 39 of the Complaint are admitted by Non-Disclaiming Defendants.

40.     With respect to the allegations in Paragraph 40 of the Complaint, Non-Disclaiming Defendants admit that the MDL Leadership Group requested that Judge Perry create a common benefit fund to compensate them and other common benefit attorneys for work performed on behalf of all plaintiffs in the LLRICE Litigation, including state court plaintiffs.  Non-Disclaiming Defendants further admit that certain parties, not including Riceland, objected to the creation of a common benefit fund on grounds including that the federal MDL court did not have jurisdiction over and could not require a common benefit hold back from state court litigants.  Non-Disclaiming Defendants deny the remaining allegations contained in paragraph 40 of the Complaint.

41.     Non-Disclaiming Defendants deny the allegations contained in paragraph 41 of the Complaint as written as incomplete and misleading.  Non-Disclaiming

Defendants respectfully refer the Court to the decision of Judge Catherine D. Perry in the Federal MDL for a complete and accurate statement of its contents and holdings.

42.     The allegations contained in paragraph 42 of the Complaint are admitted but incomplete.  The punitive verdict in Riceland's favor was reduced in accord with Act 649 of 2003, relevant provisions of which were declared unconstitutional due to the efforts of Non-Disclaiming Defendants in the *Schafer* appeal.

43.     With respect to allegations contained in paragraph 43 of the Complaint, Non-Disclaiming Defendants admit that Judge Perry issued an order regarding Riceland on February 11, 2011.  Non-Disclaiming Defendants deny the remaining allegations contained in paragraph 43 of the Complaint as written as incomplete and misleading.  Non-Disclaiming Defendants respectfully refer the Court to the papers filed in the MDL action and the decision of Judge Catherine D. Perry for a complete and accurate statement of their contents and holdings.

44.     With respect to allegations contained in paragraph 44 of the Complaint, Non-Disclaiming Defendants admit that a motion to intervene was filed and argued by Mr. Levitt, and that this Court denied the motion.  Non-Disclaiming Defendants deny the remaining allegations of paragraph 44 of the Complaint.   Non-Disclaiming Defendants respectfully refer the Court to the papers filed in the *Meins* action, the transcript of the arguments referenced, and the decision entered on the papers for a complete and accurate statement of their contents and holdings.

45.     Non-Disclaiming Defendants admit the allegations contained in the first

sentence of paragraph 45 of the Complaint and specifically deny the contention that there were two "separate" settlements.  Non-Disclaiming Defendants deny the remaining allegations as phrased, and respectfully refer the Court to the settlement agreements referenced for a complete and accurate statement of their terms and provisions.

46.  Non-Disclaiming Defendants admit the allegations contained in paragraph 46 of the Complaint and respectfully refer the Court to the settlement agreement referenced for a complete and accurate statement of its terms and provisions.

47.  With respect to the allegations contained in paragraph 47 of the Complaint, Non-Disclaiming Defendants admit that the allegations include an accurate quotation of a portion of the MDL Settlement Agreement.  Non-Disclaiming Defendants respectfully refer the Court to the settlement agreements referenced for a complete and accurate statement of their terms and provisions.

48.  Non-Disclaiming Defendants deny the allegations contained in paragraph 48 of the Complaint.  Non-Disclaiming Defendants respectfully refer the Court to the settlement agreements referenced for a complete and accurate statement of their terms and provisions.

49.  With respect to the allegations contained in paragraph 49 of the Complaint, Non-Disclaiming Defendants admit that a form of release was included in the MDL Settlement Agreement as Exhibit D.  Non-Disclaiming Defendants deny the remaining allegations contained in paragraph 49 of the complaint as written.  Non-

Disclaiming Defendants respectfully refer the Court to the settlement agreement and release form referenced for a complete and accurate statement of their terms, provisions, and contents.

50.     With respect to the allegations contained in paragraph 50 of the Complaint, Non-Disclaiming Defendants respectfully refer the Court to the release form referenced for a complete and accurate statement of its contents.

51.     Non-Disclaiming Defendants deny the allegations in paragraph 51 of the Complaint.

52.     Non-Disclaiming Defendants deny the allegations contained in paragraph 52 of the Complaint.  Non-Disclaiming Defendants respectfully refer the Court to the release form referenced for a complete and accurate statement of its contents.

53.     With respect to the allegations contained in paragraph 53 of the Complaint, Non-Disclaiming Defendants admit that Riceland was referenced in the Release as an "Additional Released Party."  Non-Disclaiming Defendants deny the remaining allegations contained in paragraph 53 of the Complaint.  Non-Disclaiming Defendants respectfully refer the Court to the release form referenced for a complete and accurate statement of its contents.

54.     With respect to the allegations contained in paragraph 54 of the Complaint, Non-Disclaiming Defendants admit that the quotation from the Release is an accurate, although edited, statement of a portion of the Release.  Non-Disclaiming Defendants deny the remaining allegations of paragraph 54 of the complaint.  Non-

Disclaiming Defendants respectfully refer the Court to the release form referenced for a complete and accurate statement of its contents.

55.   Non-Disclaiming Defendants deny the allegations contained in paragraph 55 of the Complaint as written as incomplete, inaccurate and misleading.   Non-Disclaiming Defendants respectfully refer the Court to the release form referenced for a complete and accurate statement of its contents.

56.   Non-Disclaiming Defendants admit that a combined 11% assessment for attorneys' fees and costs was withheld from any federal rice producer plaintiff's recovery as provided in Section 8 of the settlement agreement, which states in part that such "All payments to Enrolled Claimants, Included Trial Claimants (except for the Briggs and Underwood Claimants) under this Settlement Agreement shall be made as if Judge Perry's February 24, 2010 Common Benefit Order applied to those claims, including the direction that 8% of all payments to Enrolled Claimants and Included Trial Claimants (except for the Spain Claimants) be directed to the common benefit trust fund for attorneys' fees and 3% of all payments to Enrolled Claimants, Included Trial Claimants (except for the Spain Claimants), and Additional Trial Claimants (except for the Briggs and Underwood Claimants) be directed to the common benefit trust fund for costs and expenses incurred by attorneys providing a common benefit."

57.   Non-Disclaiming Defendants admit that the allegations contained in paragraph 57 of the Complaint include a quotation representing a portion of the Release but deny that it is a complete or accurate statement of the relevant portion of the

Release.  Non-Disclaiming Defendants respectfully refer the Court to the release form referenced therein for a complete and accurate statement of its contents.

58.    Non-Disclaiming Defendants admit the allegations contained in paragraph 58 of the Complaint.  Non-Disclaiming Defendants respectfully refer the Court to the release form referenced therein for a complete and accurate statement of its contents.

59.    The allegations contained in paragraph 59 of the Complaint constitute legal conclusions to which no response is required.  To the extent a response is required, Non-Disclaiming Defendants deny the allegations in paragraph 59.

60.    The allegations contained in paragraph 60 of the Complaint constitute legal conclusions to which no response is required.  To the extent a response is required, Non-Disclaiming Defendants deny the allegations in paragraph 60.

61.    With respect to the allegations contained in paragraph 61 of the Complaint, Non-Disclaiming Defendants admit that the allegations include an accurate quotation of paragraph 14.14 of the MDL Settlement Agreement.  Non-Disclaiming Defendants deny the remaining allegations contained in paragraph 61 of the Complaint. Non-Disclaiming Defendants respectfully refer the Court to the settlement agreement referenced therein and the release form for a complete and accurate statement of their terms and provisions.

62.    Non-Disclaiming Defendants deny the allegations contained in paragraph 62 of the Complaint as written.  Non-Disclaiming Defendants respectfully refer the

Court to the release form referenced for a complete and accurate statement of its contents.

63.     Non-Disclaiming Defendants admit that paragraph 14.15 of the MDL Settlement Agreement states, in part, that "Bayer may seek contribution from any Additional Released Party" but deny that the quotation is a full and complete reflection of paragraph 14.15 of the MDL Settlement Agreement.   Non-Disclaiming Defendants deny the remaining allegations contained in paragraph 63.

64.     Non-Disclaiming Defendants are without sufficient knowledge to admit or deny the allegations in paragraph 64, and therefore they are denied.

65.     With respect to the allegations contained in paragraph 65 of the Complaint, Wolf LLP denies that it directly represented any farmer but that agreements with farmers were with Wolf LLC.  The remaining Non-Disclaiming Defendants admit that they each represented farmers who have participated in the MDL Settlement.

66.     The allegations contained in paragraph 66 of the Complaint regarding the effect of a release constitute legal conclusions to which no response is required.  To the extent a response is required, Non-Disclaiming Defendants deny the allegations.  Non-Disclaiming Defendants otherwise deny as written the allegations of paragraph 66 that "all or nearly all of Defendants' farmer clients have executed a Release" and that "in each such instance, Defendant counsel for the farmer client also executed the Release." Not all farmer clients participated in the settlement and/or executed a Release.

67.     Non-Disclaiming Defendants deny the allegations contained in paragraph

67 of the Complaint.

68.     With respect to the allegations contained in paragraph 68 of the Complaint, Non-Disclaiming Defendants admit that the referenced lawsuit was filed against Plaintiff but deny all remaining allegations.

69.     Non-Disclaiming Defendants deny the allegations contained in paragraph 69 of the Complaint.

70.     With respect to the allegations contained in paragraph 70 of the Complaint, Non-Disclaiming Defendants admit that the Class Action Complaint was signed by Downing, an attorney with Gray Ritter and Levitt, an attorney with Grant & Eisenhofer. Non-Disclaiming Defendants further aver that Grant & Eisenhofer has since withdrawn as counsel of record in the Class Action. Non-Disclaiming Defendants deny the remaining allegations of paragraph 70 of the Complaint. Non-Disclaiming Defendants respectfully refer the Court to the pleading referenced for a complete and accurate statement of its contents.

71.     Non-Disclaiming Defendants deny the allegations contained in paragraph 71 of the Complaint. Non-Disclaiming Defendants respectfully refer the Court to the pleading referenced therein for a complete and accurate statement of its contents.

72.     With respect to the allegations contained in paragraph 72 of the Complaint, Non-Disclaiming Defendants admit that the Class Action Complaint asserts claims against Riceland for unjust enrichment and quantum meruit and seeks payment for common benefit services and costs. Non-Disclaiming Defendants deny the

27

remaining allegations contained in paragraph 72 of the Complaint. Non-Disclaiming Defendants respectfully refer the Court to the pleading referenced therein for a complete and accurate statement of its contents.

73. Non-Disclaiming Defendants deny the allegations contained in paragraph 73 of the Complaint.

74. Non-Disclaiming Defendants incorporate their responses to paragraphs 1-73 in response to paragraph 74 of the Complaint.

75. Non-Disclaiming Defendants deny the allegations contained in paragraph 75 of the Complaint.

76. Non-Disclaiming Defendants deny the allegations contained in paragraph 76 of the Complaint as written.

77. Non-Disclaiming Defendants deny the allegations contained in paragraph 77 of the Complaint as written.

78. Non-Disclaiming Defendants deny the allegations contained in paragraph 78 of the Complaint.

79. Non-Disclaiming Defendants deny the allegations contained in paragraph 79 of the Complaint.

80. Non-Disclaiming Defendants deny the allegations contained in paragraph 80 of the Complaint.

81. Non-Disclaiming Defendants admit the allegations contained in paragraph 81 of the Complaint with respect to their respective clients who submitted

28

claims through the MDL Settlement only and are without sufficient information to admit or deny the allegations as to any other defendant's clients; thus as to those defendants the allegations in that paragraph are denied.

82.     Non-Disclaiming Defendants deny the allegations contained in paragraph 82 of the Complaint.

83.     Non-Disclaiming Defendants admit the allegation in paragraph 83 of the Complaint that Riceland is expressly named as an "Additional Released Party" in the Release.  Non-Disclaiming Defendants deny the remaining allegations and conclusions contained in paragraph 83.  With respect to the wording of the MDL Settlement Agreement and Release, Non-Disclaiming Defendants respectfully refer the Court to the settlement agreement and release form referenced therein for a complete and accurate statement of their terms, provisions, and contents.

84.     Non-Disclaiming Defendants deny the allegations contained in paragraph 84 of the Complaint.

85.     Non-Disclaiming Defendants deny the allegations contained in paragraph 85 of the Complaint.

86.     Non-Disclaiming Defendants deny the allegations contained in paragraph 86 of the Complaint.

87.     Non-Disclaiming Defendants incorporate the responses to paragraphs 1-86 of the Complaint in response to paragraph 87.

88.     With respect to the allegations contained in paragraph 88 of the

Complaint, Non-Disclaiming Defendants admit that other farmers not represented by them participated in the MDL Settlement Agreement, but deny all remaining allegations.

89.     Non-Disclaiming Defendants are without sufficient knowledge to either admit or deny the allegations contained in paragraph 89 of the Complaint, therefore they are denied.

90.     The allegations contained in Paragraph 90 of the Complaint constitute Plaintiff's characterization of the referenced litigation, to which no response is required. To the extent that a response is required, Non-Disclaiming Defendants state that the class definition in the Complaint is incomplete and deny the allegation as written. Non-Disclaiming Defendants respectfully refer the Court to the pleading referenced therein for a complete and accurate statement of its contents.

91.     The allegations contained in paragraph 91 of the Complaint constitute a conclusion of law or Plaintiff's characterization of the referenced litigation, to which no response is required.   To the extent that a response is required, Non-Disclaiming Defendants admit that farmers participating in the MDL Settlement are included in the class.  Non-Disclaiming Defendants deny the remaining allegations of paragraph 91 of the Complaint and respectfully refer the Court to the pleading referenced therein for a complete and accurate statement of its contents.

92.     In response to the allegations contained in paragraph 92 of the Complaint, Non-Disclaiming Defendants admit that certain other farmers executed releases but are

without sufficient knowledge to admit or deny whether all other farmers executed releases, therefore the allegation is denied. The effect and validity of those releases is a legal conclusion needing no response. To the extent a response is required, Non-Disclaiming Defendants deny the remaining allegations of paragraph 92.

93.    Non-Disclaiming Defendants are without sufficient knowledge to either admit or deny the allegations contained in paragraph 93 of the Complaint, and therefore they are denied.

94.    Non-Disclaiming Defendants deny the allegations contained in paragraph 94 of the Complaint.

95.    Non-Disclaiming Defendants deny the allegations contained in paragraph 95 of the Complaint.

96.    Non-Disclaiming Defendants deny the allegations contained in paragraph 96 of the Complaint.

97.    Non-Disclaiming Defendants deny the allegations contained in paragraph 97 of the Complaint.

98.    Non-Disclaiming Defendants deny the allegations contained in paragraph 98 of the Complaint.

99.    Non-Disclaiming Defendants deny the allegations contained in paragraph 99 of the Complaint.

100.    Non-Disclaiming Defendants deny the allegations contained in paragraph 100 of the Complaint.

101.    Non-Disclaiming Defendants deny the allegations contained in paragraph 101 of the Complaint.

102.    Non-Disclaiming Defendants deny the allegations contained in paragraph 102 of the Complaint.

103.    Non-Disclaiming Defendants deny the allegations contained in paragraph 103 of the Complaint.

104.    Non-Disclaiming Defendants restate the responses to paragraphs 1-103 of the Complaint in response to paragraph 104.

105.    Non-Disclaiming Defendants deny the allegations contained in paragraph 105 of the Complaint.

106.    Non-Disclaiming Defendants restate the responses to paragraphs 1-105 of the Complaint in response to paragraph 106.

107.    The allegations contained in paragraph 107 of the Complaint constitute conclusions of law, to which no response is required.  To the extent that a response is required, Non-Disclaiming Defendants deny that Plaintiff is entitled to any form of relief and respectfully refer the Court to the statutes and rule referenced therein for a complete and accurate statement of their provisions.

108.    The allegations contained in paragraph 108 of the Complaint constitute conclusions of law, to which no response is required.  To the extent that a response is required, Non-Disclaiming Defendants deny the allegations of wrongdoing made against them in that paragraph, deny that Plaintiff is entitled to any form of relief, and

they respectfully refer the Court to the statute referenced for a complete and accurate statement of its provisions.    Non-Disclaiming Defendants deny all remaining allegations contained in paragraph 108 of the Complaint.

109.    The allegations contained in paragraph 109 of the Complaint constitute Plaintiff's characterization of the relief that it is seeking, to which no response is required.  To the extent that a response is required, Non-Disclaiming Defendants deny that Plaintiff is entitled to any form of relief, and respectfully refer the Court to the statute referenced for a complete and accurate statement of its provisions.

110.    Non-Disclaiming Defendants likewise demand a jury.

111.    Non-Disclaiming Defendants deny that Riceland is entitled to any relief.

112.    All allegations not specifically admitted are denied.

Further and in the affirmative, Non-Disclaiming Defendants  plead as follows (without assuming any burden of proof or persuasion on any defense upon which by law it does not bear such burden):

1.    Plaintiff's Complaint should be dismissed for want of jurisdiction over the subject matter.

2.    Plaintiff's Complaint fails to state facts upon which relief may be granted and should be dismissed pursuant to Rule 12(b)(6) of the Arkansas Rules of Civil Procedure.

3.    Plaintiff's Complaint should be dismissed or stayed pursuant to forum *non conveniens*.

33

4.      Plaintiff's Complaint is barred and preempted by the First Amendment of the Bill of Rights to the United States Constitution in that Riceland's claims are based entirely on litigation activities and upon the filing and prosecution of a well-founded lawsuit.

5.      Plaintiff failed to mitigate its damages.

6.      Plaintiff's Complaint is barred or will be barred by the doctrines of *res judicata* and/or collateral estoppel.

7.      Riceland impliedly consented and/or waived a challenge to the assessment of common benefit fees and expenses, which bars its claims raised here.

8.      Riceland's Complaint is barred by the economic loss rule.

9.      Riceland is estopped from pursuing their claims by the reason of its conduct prior to the filing of these lawsuits.

10.     Riceland's Complaint seeks as damages attorney's fees and such fees are not recoverable at law.

11.     Riceland's Complaint is barred by reason of a prior pending action and a first-filed action in United States District Court for the Eastern District of Missouri.

12.     Venue is improper.

13.     Riceland has failed to join an indispensable party.

14.     Non-Disclaiming Defendants reserve the right to amend this answer to assert any affirmative defense that may become available, including all such defenses noted in Rule 8.

34

Wherefore, Non-Disclaiming Defendants ask that the Complaint be dismissed or judgment entered in their favor, for their costs and attorneys' fees, and for all other relief for which they may be entitled.

## COUNTERCLAIM

COME NOW Defendants/Counterclaim Class Plaintiffs Gray, Ritter & Graham, P.C. ("GRG"), Wolf Haldenstein Adler Freeman & Herz LLC ("WHAFH"), Looper Reed & McGraw P.C. ("LRM") ("Counterclaim Class Plaintiffs), on behalf of themselves and others similarly situated, and Hare Wynn, Newell & Newton LLP ("Hare Wynn"), Davis, Bethune & Jones LLC ("Davis, Bethune"), and Neblett Beard & Arsenault LLP ("Neblett Beard"), on behalf of themselves individually ("Individual Counterclaim Plaintiffs"), and without waiving any defense or assertion concerning venue, assert this Counterclaim against Plaintiff/Counterclaim Defendant Riceland Foods, Inc. ("Riceland").

## PARTIES

1.      GRG is a professional corporation engaged in the practice of law with its principal place of business at 701 Market Street, St. Louis, Missouri 63101. GRG is incorporated in the State of Missouri and is a citizen of the State of Missouri.

2.      WHAFH is a limited liability company engaged in the practice of law with its principal place of business at 55 West Monroe Street, Suite 1111, Chicago, Illinois 60603. WHAFH LLC is organized in the State of Illinois and is a citizen of Illinois, New York, New Jersey, Connecticut and California.

3.     LRM is a professional corporation engaged in the practice of law with offices in Houston, Dallas and Tyler, Texas, with a principal place of business at 1300 Post Oak Blvd, Suite 2000, Houston, Texas 77056.  LRM is incorporated in the State of Texas and is a citizen of Texas.

4.     Hare Wynn is a limited liability partnership engaged in the practice of law with offices located at: 2025 3d Avenue, Birmingham, Alabama 35203; 2226 Cottondale Lane, Little Rock, Arkansas 72202; and 200 W. Vine St., Lexington, Kentucky 40507. Hare Wynn is a citizen of Alabama, Arkansas, and Kentucky.

5.     Davis Bethune is a limited liability company engaged in the practice of law with its principal place of business at 1100 Main Street, Suite 2930, Kansas City, Missouri 64105.  Davis, Bethune is organized in the state of Missouri and is a citizen of Missouri.

6.     Neblett Beard is a limited liability company engaged in the practice of law with its principal place of business at 2220 Bonaventure Court, Alexandria, Louisiana 71301.  Neblett Beard is organized in the state of Louisiana and is a citizen of Louisiana.

7.     Riceland is a farmers' cooperative organized under the laws of the State of Arkansas with its principal office and place of business in Stuttgart, Arkansas.  Riceland is a rice miller and marketer.

## NATURE OF THE ACTION

8.     Counterclaim Class Plaintiffs, individually and on behalf of the other

members of the Class, seek to recover against Riceland for unjust enrichment and quantum meruit as a result of the substantial benefit Riceland received from the common benefit services, materials and/or related expense items provided or paid for by Class Members. Individual Counterclaim Plaintiffs seek to recover against Riceland for unjust enrichment and quantum meruit as a result of the substantial benefit Riceland received from the common benefit services, materials and/or related expense items provided or paid for by Individual Counterclaim Plaintiffs.

## JURISDICTION AND VENUE

9.      This court has jurisdiction over the subject matter pursuant to Ark. Code 16-13-201(a).

10.      This court has personal jurisdiction over Riceland, which has its principal place of business, and actively conducts business, in Stuttgart, Arkansas.

11.      Without waiver of any defense or assertion that this action and counterclaim are more properly in federal district court pursuant to, *inter alia*, 28 U.S.C. §1453(b) and 28 U.S.C. §1332(d), venue in this court is proper pursuant to Ark. Code 16-55-2013(a) as Riceland has its principal office in Stuttgart, Arkansas.

## FACTS

*The Rice MDL and Related Actions*

12.      On August 18, 2006, the USDA announced that the U.S. rice supply had been contaminated with genetically modified LLRICE developed by Bayer CropScience

LP and related Bayer entities.[1]   Soon thereafter, thousands of rice producers and numerous non-producers (including rice mills and processors) asserted claims against Bayer in both federal and state courts.

13.     On December 19, 2006, in an effort to streamline and coordinate the large number of lawsuits filed, the Judicial Panel on Multidistrict Litigation ("JPML") transferred all pending federal court actions pertaining to the LLRICE Contamination, and all tagalong federal actions against Bayer to the District Court for the Eastern District of Missouri, which were assigned to the Honorable Catherine D. Perry (the "MDL Court") in the multidistrict proceeding captioned *In re Genetically Modified Rice Litigation*, 4:06 MD 1811-CDP  ("Rice MDL").

14.     Various claims were filed against Bayer, as well as Riceland, in the federal Rice MDL, and in state courts.  Riceland filed claims, cross claims, and/or counterclaims seeking relief against Bayer in the federal Rice MDL as well as state courts including but not limited to the matters styled *Meins, et al. v. Bayer AG, et al.*, Case No. CV-2008-108, in the Circuit Court of Arkansas County, Arkansas, Stuttgart District ("*Meins*") and *Kyle v. Bayer AG*, Case No. CV-2008-107, in the Circuit Court of Woodruff County, Arkansas ("*Kyle*").

15.     On April 18, 2007, the MDL Court appointed Don M. Downing as Plaintiffs' Co-Lead and Liaison Counsel and appointed Adam J. Levitt as Plaintiffs' Co-

---

[1] As used herein, "Bayer" is defined as Bayer CropScience LP, Bayer CropScience Holding, Inc., Bayer CropScience Inc., Bayer CropScience LLC, Stoneville Pedigreed Seed Company, Bayer Corporation, Bayer AG, Bayer CropScience AG, Bayer BioScience NV, Bayer CropScience Holding SA and Bayer CropScience SA.

Lead Counsel.    It also appointed a Plaintiffs' Executive Committee comprised of
Richard J. Arsenault, Scott E. Poynter, William Chaney, Ralph E. Chapman, Joseph R.
Whatley and Stephen A. Weiss.[2]  *See* MDL Dkt. No. 182 (the "Leadership Order").

16.    The Leadership Order provided that Lead Counsel "shall act on behalf of
all plaintiffs" in the Rice MDL to:

a.    direct and execute on behalf of Plaintiffs the filing of pleadings and other
documents with the Court;

b.    direct and manage pretrial proceedings on behalf of all plaintiffs,
including the briefing and argument of motions and the conduct of all
types of discovery proceedings;

c.    seek the assistance of other plaintiffs' counsel, including but not limited to
those  on the Executive Committee, in performance of all work necessary
for the prosecution of the case, including investigation, research, briefing,
and discovery, with particular attention to using efficiently the resources
of the other Plaintiffs' counsel in a manner commensurate with those
lawyers' resources and experience;

d.    direct the selection of counsel to act as spokespersons before the MDL
Court;

e.    call and chair meetings of Plaintiffs' counsel;

f.    direct and conduct settlement negotiations;

g.    direct and arrange a system for keeping and collecting all Plaintiffs'
counsel's time records; and

h.    supervise any other matters concerning the prosecution or resolution of
this litigation." *Id.*

17.    Over the next five years, Counterclaim Class Plaintiffs, members of the

---

[2]  Plaintiffs' Co-Lead Counsel and Executive Committee in the federal Rice MDL are sometimes
referred to herein as the "Leadership Group."

Class, and Individual Counterclaim Plaintiffs invested considerable time and financial resources to provide, and did provide, substantial benefits to all persons and entities asserting claims against Bayer - in both the Rice MDL as well as state court proceedings – which also substantially benefitted Riceland.

18.     These common benefit efforts include, but are not limited to: (a) substantial factual investigation and legal research under the laws of Missouri, Arkansas, Mississippi, Louisiana, and Texas, in connection with the drafting of a consolidated master complaint that was used as a model for later complaints in both state court and federal court; (b) spearheading extensive document discovery efforts (including drafting and responding to numerous discovery requests, serving subpoenas on numerous third parties, and reviewing, coding and managing over 2.8 million pages of documents in order to lay the groundwork for the depositions that followed); (c) engaging in extensive and protracted meet-and-confer discussions with Bayer's counsel and counsel for third parties with respect to discovery and other case-related issues and engaging in motion practice relating thereto; (d) taking or defending 167 depositions across the United States and internationally, which provided important fact discovery and persuasive trial evidence for all plaintiffs; (e) successful effectuation of service on the foreign Bayer entities and opposition to Bayer's motion to dismiss the claims against the foreign Bayer entities for lack of personal jurisdiction, which paved the way for all plaintiffs (including Riceland) to obtain discovery from the foreign Bayer entities; (f) coordination of pre-trial proceedings with all plaintiffs' counsel in the Rice MDL and in

related state court actions, including counsel for Defendant; (g) identifying, interviewing and selecting from numerous candidates, consulting and testifying experts; (h) prosecuting and defending numerous and significant dispositive, evidentiary and other motions, including the successful opposition to Bayer's summary judgment motions, which contained arguments that, if accepted, would have cut off the right to recovery, in whole or in part, for every plaintiff in a state with the same or similar laws; (i) preparation of numerous opening and rebuttal expert reports (and taking discovery pertaining to Bayer's experts); (j) preparing for numerous trials, including by, among other things, holding multiple mock trials and meeting with jury consultants to refine their trial strategy and the evidence presented; (k) conducting three successful bellwether trials,[3] two of which were completed before any other trials in the country began and one of which was tried under Arkansas law, as well as the state court trial of *Schafer v. Bayer CropScience LP*, CV-06-423, in the Circuit Court of Lonoke County, Arkansas ("*Schafer*"); (l) defending the appeals of all bellwether trial verdicts before the 8th Circuit Court of Appeals and defending the appeal of the plaintiffs' verdict in the *Schafer* case before the Arkansas Supreme Court; (m) organizing, directing and participating in mediation proceedings before Judge Limbaugh and John Perry, conducting numerous teleconferences, and sending numerous e-mails and other correspondence keeping plaintiffs' counsel (including Defendant) advised of the status of settlement discussions; and (n) leading the

---

[3] The fourth bellwether trial settled prior to its conclusion.

settlement discussions which resulted in a Global Producer Settlement announced on July 1, 2011.

19.     The common benefit services, materials and/or related expense items provided or paid for by Counterclaim Class Plaintiffs, Class Members, and Individual Counterclaim Plaintiffs have benefited all claimants in both the federal and state cases-including Riceland.

20.     On January 20, 2009, the same day that Riceland amended its cross-claim against Bayer in the *Meins* case, it also filed a complaint against Bayer in federal court which was transferred to the MDL (Case No. 4:09-cv-433). The claims in the state cross-claim and the federal complaint were substantially the same.

***The Common Benefit Order***

21.     In August 2009, the Leadership Group filed a motion to establish a Common Benefit Fund to compensate attorneys providing services and incurring expenses for the common benefit of all persons or entities that suffered loss as a result of the LLRICE Contamination, including plaintiffs with cases pending in state court (the "Common Benefit Attorneys"). The motion entailed substantial briefing, as well as comprehensive and heated opposition from various parties. *See e.g.*, Rice MDL Dkt Nos. 1458-1460, 1522, 1525, 1527, 1585-1586).

22.     Riceland did not object to the Leadership Group's motion. To the contrary, up to and including the date of the common benefit motion, Riceland affirmatively indicated its agreement with a common benefit fund and also represented

that it would enter into a joint prosecution agreement under which Riceland would pay a common benefit fee assessment in the amount of 7% of any recoveries it obtained from Bayer, whether federal or state, as well as a cost assessment, for fees and costs of Common Benefit Attorneys.   Indeed, in reliance on these representations, Leadership members agreed to Riceland's request to add a provision to the joint representation agreement with various state and federal court producers and non-producers that no experts would opine against Riceland.

23.     On February 24, 2010 the MDL Court entered its order granting, in large part, the Leadership Group's motion.  *See* Rice MDL Dkt No. 2574 ("Common Benefit Order"), attached as Exhibit A.

24.     The MDL Court ordered that Bayer "hold back and set aside for placement into Lead Counsel's common benefit trust fund, the following amounts related to each federal genetically modified rice case and related to each state case where either the parties agree, or the State Court having jurisdiction orders: (i) 8% of any gross recovery obtained by producer plaintiffs by way of judgment, settlement or otherwise, for attorneys' fees; (ii) 7% of any gross recovery obtained by non-producer plaintiffs, except for the ENPs [European non-producers], by way of judgment, settlement, or otherwise, for attorneys' fees; (iii) 6% of any gross recovery obtained by European non-producer plaintiffs, except for Rickmers, by way of judgment, settlement, or otherwise, for attorneys' fees; and (iv) an additional 3% of any gross recovery obtained by any plaintiff, by way of judgment, settlement, or otherwise for common

benefit costs and expenses incurred by attorneys providing a common benefit."

25.     In accordance with the Common Benefit Order, all recoveries against Bayer in the MDL, or in state cases where the parties agreed, were subject to a common benefit fee assessment ranging from 6-8% of the plaintiff's gross recovery, and a common benefit cost assessment in the amount of 3% of the plaintiff's gross recovery. WHAFH and LRM, among others, paid the 3% cost assessment on behalf of certain of their respective clients.

26.     The Common Benefit Order is consistent with Riceland's prior representations that it was willing to, and would, contribute a 7% common benefit fee assessment, as well as a cost assessment.

27.     In its Common Benefit Order, the MDL Court reluctantly concluded, based on arguments advanced by persons other than Riceland, that it lacked jurisdiction to extend the provisions of that Order to parties not before it in the MDL. The Court, however, also found that these parties would be unjustly enriched should they refuse to pay into the common benefit

fund, stating:

> I urge the parties to consider the unjust enrichment issues [implicated by state court plaintiffs and their counsel benefitting from the common benefit work in the Rice MDL] in their settlement negotiations, and I urge the state court judges handling the cases to consider requiring participation in the fund by the parties over whom they have jurisdiction.

Common Benefit Order (Rice MDL Dkt No. 2574) at 2.

44

*Benefits Conferred on Riceland*

28.     In its Common Benefit Order, the MDL Court recognized the extensive benefits reaped from Counterclaim Class Plaintiffs, the Class, and Individual Counterclaim Plaintiffs by both producers and non-producers not only in the Rice MDL but the related state-court cases. *See* Common Benefit Order (Rice MDL Dkt No. 2574) at 2, 4-5, 12-14.

29.     The MDL Court found, in relevant part, that:

> it is abundantly clear that the plaintiffs in the related state court cases have derived substantial benefit from the work of the leadership counsel in these federal cases. In fact, most of the lawyers representing plaintiffs in state court cases have agreed to join the [common benefit] trust. ***The lawyers and plaintiffs who have not agreed to join in the trust will have been unjustly enriched if they are not required to contribute to the fees of the leadership group.*** But I do not have jurisdiction to order the hold-back for those states court cases . . . I urge the parties to consider the unjust enrichment issues in their settlement negotiations and I urge the state court judges handling the cases to consider requiring participation in the fund by the parties over whom they have jurisdiction.

*Id.* at 2 (emphasis added).

30.     The MDL Court further found:

> For almost three years, the leadership group has coordinated pre-trial preparations for all plaintiffs in this litigation with claims against the Bayer defendants. In an early Case Management Order [ ], I ruled that depositions taken in the MDL could be cross-noticed with state cases and could be used in the state suits to the extent allowed by the applicable state courts. The leadership group, along with other plaintiffs' counsel working with it, has prepared for and conducted several hundred depositions, has requested discovery, appears before the court regularly at hearings and

conferences, prepares and opposes motions, selects and
prepares experts, and negotiates with defendants on
procedural and substantive issues related to the litigation.
The leadership group shares the products of its labor with all
of the plaintiffs. All depositions and other discovery
responses from the Bayer defendants have been made
available to all the plaintiffs in all the cases, state and federal.
The leadership group made available to state counsel the
massive document production that it received from the
Bayer defendants.

. . . .

As set out above, the leadership group's work in discovery,
motion practice, and the bellwether trials has provided a
foundation for all of the cases involved in the litigation.
Evidence about what Bayer did in developing and
distributing the genetically modified rice is central to the
proof on all the claims in this litigation. This evidence was
exclusively within Bayer's control, and the only realistic way
for the evidence to be developed was through the type of
centralized discovery that the leadership group conducted.
It would not have been possible for thousands of plaintiffs to
separately obtain discovery from Bayer, and that, of course,
is part of the reason the cases were combined in this MDL. In
addition to coordinating and conducting all discovery
against Bayer, the leadership lawyers have conducted two
bellwether trials. Those trials essentially provided a preview
for all other plaintiffs of the trial testimony they might
expect from the Bayer witnesses and the types of cross-
examination that their witnesses and clients might expect at
trial from Bayer's counsel. The trial preview, when
combined with the discovery, is a great benefit for *all
plaintiffs, whether they are producers, non-producers, or
ENPs.*

. . . .

Plaintiffs are substantially benefitted by 'the mere
availability' of relevant discovery, even if an objecting
plaintiff chooses not use it. In this case, of course, the
objectors have actually used the leadership group's
materials.

*Id.* at 4-5, 12-14 (citation omitted) (emphasis added).

46

31.    As found by the MDL Court, common benefit work in the MDL in discovery, motion practice, and the bellwether trials was foundational to all of the claims against Bayer, whether asserted in federal or state court.  Evidence about what Bayer did in developing and distributing the genetically modified rice was "central to the proof on all the claims."  *Id.* at 12.   Counterclaim Class Plaintiffs, members of the Class, and Individual Counterclaim Plaintiffs first discovered the facts – and first made the legal arguments – essential to Bayer's liability.

32.    Riceland received and accepted the benefit of these services as to its claims, whether federal or state.  As the MDL Court held, all parties, including producers and non-producers such as Riceland, received substantial benefit from the common benefit work.

33.    Because Riceland had cases in both the Rice MDL and state court, it had access to the common benefit services, materials and/or related expense items provided or paid for by Counterclaim Class Plaintiffs, members of the Class, and Individual Counterclaim Plaintiffs.

34.    Riceland obtained and accepted the common benefit services, materials and related expense items provided or paid for by Counterclaim Class Plaintiffs, the Class, and Individual Counterclaim Plaintiffs in its state court cases for, among other things, its own discovery, motions, responses, testimony, exhibits, cross-examination, arguments, and strategy.

35.    Among other things, counsel for Riceland attended at least portions of the

MDL bellwether trials, receiving invaluable previews on witnesses, evidence, and argument.

36.     Riceland acknowledged the benefit it had and was receiving from the services performed by Common Benefit Attorneys.   Riceland also affirmatively represented that it was willing to and would contribute to common benefit fees and costs based on a percentage of any recoveries against Bayer, whether federal or state, and consistent therewith, did not object to the motion to establish the common benefit fund.   Riceland continued to be a party in the MDL, with claims against Bayer "essentially the same as the claims it asserts against Bayer in its Arkansas [*Meins*] case." Memorandum and Order (Rice MDL Dkt No. 4033) at 1-2, attached as Exhibit B.

37.     In November, 2010, however, Riceland indicated that it was now unwilling to satisfy its common benefit obligations.   Riceland, obliged to contribute with respect to any federal recovery under the Common Benefit Order, determined to proceed to trial in the Arkansas *Meins* case instead of its identical claims in the MDL. Thus, and despite Riceland's earlier representations that it would contribute voluntarily to the common benefit fund, Riceland changed course and took the position that it would not contribute with respect to any recovery it received in the *Meins* case.

38      On January 18, 2011, the Leadership Group moved to compel Riceland to comply with the Common Benefit Order with respect to any recovery it received in the *Meins* case, scheduled for trial on February 15, 2011.

39.     On February 11, 2011, the MDL Court found that it lacked jurisdiction to

compel Riceland to contribute a portion of its state-court recovery, but also found that
its ruling "creates a risk that Riceland will be unjustly enriched," stating further: "In the
original common benefit order, I found that Riceland had received a substantial benefit
from the leadership group's work. Riceland did not object to this conclusion at the time
and it remains my opinion that Riceland has, in fact, received a substantial benefit from
the leadership group's work in this MDL. Despite this, Riceland refuses to voluntarily
agree to contribute to the fund." Memorandum and Order (Rice MDL Dkt No. 4033) at
2-3.

42. The substantial benefits to Riceland found by the MDL Court continued
when Riceland went to trial in *Meins*. Riceland made extensive use of MDL work in
*Meins*, with which it obtained a recovery, unjustly enriching Riceland at the expense of
Counterclaim Class Plaintiffs, members of the Class, and Individual Counterclaim
Plaintiffs.

41. Riceland had the benefit of the deposition discovery and documents
obtained from Bayer in the Rice MDL as well as the legal research, arguments, motions,
responses, pre-trial, trial, and post-trial work performed or paid for by Counterclaim
Class Plaintiffs, the Class, and Individual Counterclaim Plaintiffs for use in the *Meins*
case. Bayer raised many of the same arguments in *Meins* as it had in the MDL
proceedings, which Riceland opposed by borrowing freely (sometimes virtually
verbatim) from arguments researched, briefed and, filed in the MDL, and citing MDL
rulings. These included, among others, Bayer's motion for express preemption under

the Plant Protection Act and motion for summary judgment based on the economic loss doctrine. Riceland also advanced numerous arguments based on work in the MDL including its motion for summary judgment on Bayer's affirmative defense based on preemption, motion for partial summary judgment on the agency of Bayer's Liberty Link rice cooperators, motion for summary judgment on Bayer's affirmative defense of compliance with applicable statutes and regulations, motion for partial summary judgment on successor liability of Bayer entities, motion in limine to exclude testimony of Bayer's experts, motion in limine to exclude portions of the USDA report pertaining to the genetically modified rice contamination, and motion in limine regarding adventitious presence.

42.     Riceland also used numerous exhibits and the testimony of numerous key witnesses from the MDL to support liability against Bayer, as well as Riceland's claim for punitive damages, in the *Meins* case.

43.     Riceland obtained a verdict against Bayer in the *Meins* case in the amount of $11.83 million in compensatory damages and $125 million in punitive damages. Bayer appealed the verdict. Upon information and belief, while appeal of the *Meins* case was pending Bayer and Riceland reached a settlement whereby Bayer agreed to pay Riceland in excess of $80 million.

44.     In addition to work in the MDL, the case captioned *Schafer v. Bayer CropScience, LP*, CV-06-423, went to trial in the Circuit Court of Lonoke County, Arkansas prior to the *Meins* case. This case resulted in a plaintiffs' verdict for

compensatory damages as well as punitive damages in the amount of $42,000,000. This verdict was upheld on appeal by the Arkansas Supreme Court, which held Arkansas' punitive damages cap unconstitutional. Riceland benefitted by the common benefit work which produced this verdict and ruling as well.

45.     Riceland also had the use of these services and other items in defending itself against claims made against it in at least one other state court case involving the genetically modified rice contamination.

46.     On September 4, 2012, Plaintiffs' Co-Lead Counsel in the Rice MDL filed a motion for allocation and distribution of common benefit fees and expenses in the Rice MDL. On December 6, 2012, after exhaustive briefing on the issues, the Court issued an Order Adopting the Report and Recommendation of the Special Master for the Allocation and Distribution of Common Benefit Fees and Expenses (the "Allocation and Distribution Order") (Rice MDL Dkt No. 4935), attached as Exhibit C, granting the motion and ordering that the Common Benefit Attorneys' fees and expenses be paid from the fund.    The Court further ordered that six designated firms, including Counterclaim Class Plaintiffs GRG, LRM, and Wolf Haldenstein Adler Freeman and Herz LLP, which assigned its claim to WHAFH, as well as Hare Wynn, Davis Bethune, and Neblett Beard, are entitled to any additional funds they received up to $72 million and that "if the total common benefit fund amounts received exceeds $72 million, plaintiffs' co-lead counsel shall approach the Court with a recommendation as to the allocation of those additional funds."

47.     Among other things, the Court found that all state-court cases "benefitted greatly from the work performed by the common benefit attorneys." Rice MDL Dkt No. 4935 at 3-4.

48.     Riceland did benefit from such work in both its federal and state cases. Indeed, Riceland's own lawyer, Barry Deacon, participated in common benefit work at the request of Plaintiffs' Co-Lead Counsel in the Rice MDL, for which he was paid out of the common benefit fund.

## CLASS ACTION ALLEGATIONS

49.     Counterclaim Class Plaintiffs bring this action pursuant to Arkansas Rule of Civil Procedure 23, individually and on behalf of all persons and entities that provided or paid for common benefit services, materials, and/or related expense items (the "Class"). Excluded from the Class is Riceland.

50.     **Numerosity –Arkansas Rule of Civil Procedure 23(a)(1).** The requirements of Arkansas Rule 23(a)(1) are satisfied because Class members are sufficiently numerous and geographically dispersed so as to make joinder of all members of the Class impracticable. There are thousands of Class members dispersed throughout the country. The numerosity requirement of Arkansas Rule 23(a)(1) is, therefore, satisfied.

51.     **Commonality and Predominance – Arkansas Rule of Civil Procedure 23(a)(2) and 23(b).** There are questions of law or fact common to all Class members and predominate over questions affecting only individual members of the Class. Among

52

those common questions of law or fact pertaining to the Unjust Enrichment and

Quantum Meruit claims are:

(a)   whether Class members furnished goods or services received
      by Riceland

(b)   whether the common benefit services, materials
      and/or related expense items provided and paid for
      by Class members conferred a benefit on Riceland;

(c)   whether Riceland accepted the benefits provided;

(d)   whether Riceland accepted the benefits provided
      under circumstances that would make retention
      without payment unjust.

52.   **Typicality – Arkansas Rule of Civil Procedure 23(a)(3).**   Counterclaim

Class Plaintiffs' claims are typical of the claims of the other Class members because they

arise from the same course of conduct by Riceland and are based on the same legal

theories – as do the claims of all other Class members. Accordingly, Counterclaim Class

Plaintiffs have satisfied the typicality requirements of Arkansas Rule 23(a)(3) with

respect to the Class they seek to represent.

53.   **Adequacy of Representation – Arkansas Rule of Civil Procedure
23(a)(4).**   Counterclaim Class Plaintiffs and counsel will fairly and adequately protect

the interests of the Class.  Counterclaim Class Plaintiffs are adequate representatives of

the Class they seek to represent because the claims of all Class members are based on

the same circumstances and legal theories, and the interests of Counterclaim Class

Plaintiffs do not conflict with the interests of the other Class members relating to the

claims set forth herein.  In addition, proposed class counsel has the capability and expertise to prosecute these claims on behalf of all Class members.

54.    **Superiority – Arkansas Rule of Civil Procedure 23(b).**  A class action is superior to other methods for the fair and efficient adjudication of the controversy, and no unusual difficulties are likely to be encountered in the management of this class action. Class treatment will permit a sufficiently numerous group of similarly-situated persons and/or entities to prosecute their respective claims in a single forum, simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, and expense that numerous individual actions would produce. Furthermore, while damages to members of the proposed Class are substantial in the aggregate, the damages to any individual member of the proposed Class may be insufficient to justify individually controlling the prosecution of separate actions against Defendant. Even if members of the Class could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. Given the similar nature of the claims asserted by Counterclaim Class Plaintiffs individually and on behalf of the other members of the Class, class treatment of this litigation will ensure that all claims and claimants are before this Court for consistent adjudication thereof and will be easily managed by the Court and the parties to this

action.

55.     There are more than 100 members in the Class.

56.     The matter in controversy exceeds the sum or value of $5,000,000,

exclusive of interest and costs.

57.     Counterclaim Class Plaintiffs and other members of the Class are citizens

of different states than Riceland.

**COUNT I**
**QUANTUM MERUIT**
**(On Behalf of Counterclaim Class Plaintiffs and the Class)**
**(On Behalf of Individual Counterclaim Plaintiffs)**

58.     Counterclaim Class Plaintiffs and Individual Counterclaim Plaintiffs

incorporate the allegations set forth in paragraphs 1-57 as if fully set forth herein.

59.     Counterclaim Class Plaintiffs, the Class, and Individual Counterclaim

Plaintiffs  provided services and related expense items to Riceland, who received the

benefit of such services and goods.

60.     Riceland accepted and acknowledged the benefit of the services and

related expense items provided, up to and including the date on which Leadership

sought a common benefit fund in *In re Genetically Modified Rice Litigation*. Riceland also

affirmatively represented that it was willing to and would pay a common benefit fee

assessment of 7% of gross recoveries (whether federal or state).  Riceland also made no

objection to creation of a common benefit fund, to Riceland's own contribution or level

of contribution for either fees or costs, and continued to accept the benefits provided by

Counterclaim Class Plaintiffs, the Class, and Individual Counterclaim Plaintiffs

thereafter as to Riceland's claims, whether federal or state.

61.     In addition, the circumstances, including those set out in paragraphs 16, 18, 22, 23-31, 33-34, 36, 40-42, and 60 above, were such to warrant reasonable expectation of payment by Riceland.

62.     Riceland was aware that Counterclaim Class Plaintiffs, the Class, and Individual Counterclaim Plaintiffs had and were providing the services and related expense items with the expectation of being reimbursed, and accepted and continued to accept the same.

63.     Riceland later disclaimed an obligation to contribute to the common benefit fund based on the MDL Court's ruling that it lacked jurisdiction to order contribution from persons not parties to the MDL, which Riceland argued should apply to Riceland's state claims although it remained a party to the MDL.

64.     Despite Riceland's arguments against contribution, and notwithstanding the MDL Court's admonition against unjust enrichment, Riceland continued to use the services and related expense items provided by Counterclaim Class Plaintiffs, the Class, and Individual Counterclaim Plaintiffs from which Riceland benefitted.

65.     The common benefit services, materials and/or related expense items provided or paid for by Counterclaim Class Plaintiffs, the Class, and Individual Counterclaim Plaintiffs conferred benefits on Riceland, who received, appreciated, accepted, and appropriated such benefits.

66.     It would be unjust to allow Riceland to retain such benefits at the expense

56

of Counterclaim Class Plaintiffs, the Class, and Individual Counterclaim Plaintiffs.

67.     The MDL Court found that Riceland  received substantial benefit from the services and related expense items provided by Counterclaim Class Plaintiffs, the Class, and Individual Counterclaim Plaintiffs, and has been unjustly enriched thereby. The MDL Court further found that the reasonable value of the services is 7% of gross recoveries obtained by Riceland from Bayer. The MDL Court also found that a reasonable contribution for costs expended for the common benefit was 3% of gross recovery obtained from Bayer.  These findings are consistent with Riceland's own representations that it would voluntarily pay a common benefit fee in the amount of 7% of gross recoveries, as well as a cost assessment.    Riceland is bound by these findings and by its own acknowledgement and representations, and/or is estopped from contending to the contrary.

68.     Riceland has received the whole of its state recoveries against Bayer, including 10% thereof, that in equity and good conscience Riceland should not retain.

69.     As a result of Riceland's unjust enrichment, Counterclaim Class Plaintiffs, the other members of the Class, and Individual Counterclaim Plaintiffs are entitled to restitution from Riceland in an amount equal to 10% of the gross recovery against Bayer (whether by judgment, settlement, or otherwise) in any of its state court cases.

## COUNT II
## UNJUST ENRICHMENT
### (On Behalf of Counterclaim Class Plaintiffs and the Class)
### (On Behalf of and Individual Counterclaim Plaintiffs)

70.     Counterclaim Class Plaintiffs and Individual Counterclaim Plaintiffs

incorporate the allegations set forth in paragraphs 1-69 as if fully set forth herein.

71.     In addition, or in the alternative to Count I, Individual Counterclaim Plaintiffs assert this claim for Unjust Enrichment.

72.     In addition, or in the alternative to Count I, Counterclaim Class Plaintiffs assert this claim for Unjust Enrichment on behalf of themselves and the Class.

73.     As the MDL Court found, Counterclaim Class Plaintiffs, the Class, and Individual Counterclaim Plaintiffs provided a significant amount of common benefit services, materials and/or related expense items to all parties who brought claims against Bayer arising out of the LLRICE Contamination, including Riceland.

74.     Riceland accepted these common benefit services, materials and/or related expense items and benefitted from them in all of its cases both in and outside of the Rice MDL.

75.     Riceland accepted the benefit of such services and related expense items under circumstances making retention of the same unjust.

76.     Riceland's unjust enrichment was to the detriment of Counterclaim Class Plaintiffs, the Class, and Individual Counterclaim Plaintiffs.

77.     As a result of Riceland's acceptance of and unjust benefit from the common benefit services, materials and related expense items, Counterclaim Class Plaintiffs, the Class, and Individual Counterclaim Plaintiffs are entitled to restitution in an amount equal to 10% of Riceland's gross recovery against Bayer (whether by judgment, settlement or otherwise) in any related state court case.

## REQUEST FOR RELIEF

**WHEREFORE**, Counterclaim Class Plaintiffs on behalf of themselves and the Class, and Individual Counterclaim Plaintiffs respectfully request judgment as follows:

1.     Ordering restitution, and specifically requiring Riceland to return the monies unjustly retained by it, in the amount of 10% of the gross recovery against Bayer (whether by judgment, settlement or otherwise), in any related state-court case; and,

2.     Pre-judgment and post-judgment interest at the maximum rates permitted by law; and

3.     For such other equitable relief as this Court deems just and proper.

Counterclaim plaintiffs seek recovery in excess of the amount required for federal court jurisdiction in diversity of citizenship cases.

BRIAN G. BROOKS
AR Bar No. 94209
Brian G. Brooks, Attorney at Law, PLLC
P.O. Box 605
Greenbrier, AR  72058
(501) 733-3457
bgblawfirm@sbcglobal.net

and

SHAWN B. DANIELS
AR Bar No. 99126
HARE, WYNN, NEWELL & NEWTON, LLP
2226 Cottondale Lane, Suite 210
Little Rock, AR  72202

Phone: 501-225-5500/877-225-6312
Fax: 501-225-5501
shawn@hwnn.com

*Counsel for Defendants Gray, Ritter &
Graham, PC., Don M. Downing, Adam J.
Levitt, Wolf Haldenstein Adler Freeman & Herz
LLC, Worf Haldenstein Adler Freeman & Herz
LLP, Neblett Beard & Arsenault, LLP, Richard J.
Arsenault, Looper Reed & McGraw, P.C., William
Chaney, Hare Wynn, Newell & Newton LLP, and
Scott Powell, Davis, Bethune & Jones, L.L.C, and
Grant L. Davis.*

MORROW WILLNAUER KLOSTERMAN
CHURCH, L.L.C.
James C. Morrow
Abagail L. Pierpoint
Executive Hills East, Building A
10401 Holmes, Ste. 300
Kansas City, MO 64131-3405
Phone:  816-382-1382
Fax:  816-382-1383
jmorrow@mwklaw.com
apierpoint@mwklaw.com

*Counsel for Defendants Davis, Bethune & Jones,
L.L.C, and Grant L. Davis*

## CERTIFICATE OF SERVICE

I, Shawn Daniels, hereby certified that on this 18th day of October, 2013, I served the foregoing by electronic mail upon:

Barry Deacon
Andrew Dallas
Jason Milne
DEACON LAW FIRM, P.A.
P.O. Box 3000
Jonesboro. AR 72403
2524 Alexander Drive, Ste. B
Jonesboro, AR 72401
Telephone: (870) 336-9300
bdeacon@deaconlawfirm.com
djohnson@barrettdeacon.com
djohnson@deaconlawfirm.com

John Musgrave
Christopher Hohn
THOMPSON COBURN LLP
One US Bank Plaza
St. Louis, MO 63101
Telephone: (314) 552-6000
jmusgrave@thompsoncoburn.com
dnorton@thompsoncoburn.com
rwatson@thompsoncoburn.com
chohn@thompsoncoburn.com
mmahalik@thompsoncoburn.com

Shawn B. Daniels

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE GENETICALLY MODIFIED | ) | 4:06 MD 1811 CDP |
| RICE LITIGATION | ) | ALL CASES |

## **MEMORANDUM AND ORDER**

This motion is before the Court as part of multidistrict litigation stemming

from the spread of unapproved genetically modified long-grain rice into the U.S.

commercial rice supply.  Shortly before the start of the first bellwether trial, the

court-appointed plaintiffs' leadership group filed this motion to create a common

benefit trust fund.  The purpose of the proposed trust is to pay fees and expenses

of attorneys who perform work benefitting all of the plaintiffs.  The proposed trust

would be funded by defendants' setting aside a percentage of awards or

settlements in all cases related to the MDL.

Three groups of plaintiffs, as well as the Bayer defendants, object to the

proposed trust.  They argue that this Court lacks authority and jurisdiction to enter

the requested order, that the motion is premature, and that the leadership group has

not provided them a substantial benefit.  For the reasons stated below, I will grant

the leadership group's motion in part.  I will order the establishment of the trust,

but it cannot be as broad as requested.

First, I will not require defendants to hold back and contribute amounts


EXHIBIT
_A_

from settlements and judgments related to cases pending in state courts. I reach this conclusion reluctantly, because it is abundantly clear that the plaintiffs in the related state-court cases have derived substantial benefit from the work of the leadership counsel in these federal cases. In fact, most of the lawyers representing plaintiffs in state cases have agreed to join in the trust. The lawyers and plaintiffs who have not agreed to join in the trust will have been unjustly enriched if they are not required to contribute to the fees of the leadership lawyers. But I do not have jurisdiction to order hold-backs for those state cases. This is so even though the plaintiffs' lawyers who have state cases also have cases before me. I urge the parties to consider the unjust enrichment issues in their settlement negotiations, and I urge the state court judges handling the cases to consider requiring participation in the fund by the parties over whom they have jurisdiction.

Second, I will reduce by one percent the amount that must be contributed to the fund for cases involving the European non-producer plaintiffs.[1] For the federal producer plaintiff cases, I will require defendants to contribute a total of 11% of any settlement or judgment to the fund. For domestic non-producer plaintiff cases, defendants must contribute a total of total of 10%. Defendants must contribute a

---

[1]Movants agree that one European non-producer plaintiff, Rickmers Reismuehle GMBH, should be exempt from the hold-back order because it has not sued Bayer (movants' reply memorandum, docket entry # 1585, at p. 22, n. 25).

total of 9% in cases where the plaintiffs are European non-producers.

## A.    __Background__

Approximately seven thousand plaintiffs – rice farmers and others in the

rice business – have filed suit claiming that they were damaged because of the

2006 contamination of the long-grain rice supply by Bayer's unapproved

genetically modified rice.  The Judicial Panel on Multidistrict Litigation

transferred around 300 federal cases, involving claims of approximately five

thousand plaintiffs, to this Court for consolidated handling of pre-trial matters.

Approximately two thousand additional plaintiffs have cases pending in state

courts.

I designated a group of plaintiffs' attorneys as leadership counsel in an

order dated April 18, 2007.  On December 22, 2008, I added John K. Baker to the

leadership group as liaison counsel for the European non-producer plaintiffs,

whose interests are not necessarily the same as those of the other plaintiffs.  Many

attorneys filed suit in state court, and Bayer removed to federal court all the cases

that had complete diversity.  Bayer also removed some cases where non-diverse

defendants were sued.  I ruled in some of those cases that the  non-diverse

defendants had been fraudulently joined to defeat diversity jurisdiction, but I

remanded others where there was no fraudulent joinder.  Many plaintiffs' lawyers

represent plaintiffs in the federal cases as well as plaintiffs in the state cases. In fact, all of the producer plaintiffs' attorneys who object to this motion represent plaintiffs in cases before me and in cases pending in state courts.

For almost three years, the leadership group has coordinated pre-trial preparations for all plaintiffs in this litigation with claims against the Bayer defendants. In an early Case Management Order (CMO # 3), I ruled that depositions taken in the MDL could be cross-noticed with state cases and could be used in the state suits to the extent allowed by the applicable state courts. The leadership group, along with other plaintiffs' counsel working with it, has prepared for and conducted several hundred depositions, has requested discovery, appears before the court regularly at hearings and conferences, prepares and opposes  motions, selects and prepares experts, and negotiates with defendants on procedural and substantive issues related to the litigation.

The leadership group shares the products of its labor with all of the plaintiffs. All depositions and other discovery responses from the Bayer defendants have been made available to all the plaintiffs in all the cases, state and federal. The leadership group made available to state counsel the massive document production that it received from the Bayer defendants. At the time the leadership group filed this motion they had incurred approximately $2,000,000 in

-4-

costs and $20,000,000 in attorneys' fees.  These numbers, of course, are much

higher now, because the leadership group has now conducted two bellwether trials

in this court, both resulting in plaintiffs' verdicts.

One of the objecting lawyers, Martin Phipps, is currently conducting a trial

of one plaintiff's case in an Arkansas state court.  Although Phipps has used his

own expert witnesses, he has also used the depositions taken by the leadership

group, and he has used the documents and other discovery from Bayer obtained by

the leadership group.  A member of the Phipps firm attended all depositions

conducted by the leadership group and asked questions at the end.  A

representative of the Phipps firm was in daily attendance at the second bellwether

trial.  The Phipps firm and other firms with state cases obtained large portions of

the trial transcripts of the bellwether trials, including the examination and cross-

examination of some of the same expert witnesses who Bayer will use in the

current Arkansas trial and in other state trials.

The leadership group seeks creation of a common benefit trust fund that

would reimburse attorneys for fees and expenses for work benefitting clients they

do not directly represent.  To fund the trust, the leadership group asks the court to

order that defendants hold back and pay into the trust 10% or 11% percent of any

recoveries owed to any plaintiffs (state and federal), whether the recoveries result

from judgments or settlements. The proposed trust would be maintained by the leadership group. After the court establishes the trust, any attorney who performs services that benefit all of the plaintiffs could petition the trust for reimbursement. The trust funds would be disbursed in the future only by order of this court, after notice and an opportunity for any affected party to be heard.

The leadership group has proposed two contribution levels. First, they propose that in producer (rice farmer) cases defendants contribute a total of 11% of any gross recovery. Eight percent would be set aside to pay attorneys' fees, while 3% would be set aside for expenses. They also request that defendants in non-producer cases contribute 7% toward attorneys fees and 3% toward expenses, for a total of 10% of any settlement or judgment. The non-producer plaintiffs are rice mills, rice transport companies, and rice purchasers.

Attorneys for a majority of plaintiffs, including many of the non-producer plaintiffs, consent to the creation of the trust, consent to the inclusion of their state court cases, and consent to the proposed contribution levels. According to the leadership group, attorneys for "as many as 4,000 of the 6,000 plaintiffs in this MDL support" the trust. However, there are parties who object. The objectors are a group of European non-producer (ENP) plaintiffs, two groups of domestic producer plaintiffs, and the Bayer defendants. The objecting ENPs are Tilda, Ltd.,

-6-

Rickmers Reismuehle GMbH, Van Sillevoldt Rijst, BV, and Westmill Foods. The objecting producer plaintiffs are all represented by two legal teams. Those two legal teams, when combined, represent almost 2,000 plaintiffs, primarily producers in Arkansas, Texas, and Louisiana.

The objecting producer plaintiffs argue: (1) that the court lacks authority or jurisdiction to establish any trust, (2) that the court lacks jurisdiction to enter orders that would affect state cases, and (3) that they have done their own work and have not benefitted from the work of the leadership group. The ENP objectors argue that their interests are so different from those of the other plaintiffs that they should not be included. They point out that they are suing both Bayer and other parties, including some rice mills and rice transport companies who are actually plaintiffs themselves represented by the leadership group. The ENPs claim that they have not received a substantial benefit from the leadership group's efforts, even in their claims against Bayer, and that they have had to conduct their own discovery and retain their own experts. The Bayer defendants raise objections similar to those of the domestic producer plaintiffs, and they also argue that the motion is premature.

**B.    Authority to Establish a Trust**

An MDL court's authority to establish a trust and to order contributions to

compensate leadership counsel derives from its "managerial" power over the
consolidated litigation, and, to some extent, from its inherent equitable power.[2] *In
re Air Crash Disaster at Fla. Everglades*, 549 F.2d 1006, 1008 (5th Cir. 1977), is
the case most often cited as the basis for allowing a common benefit trust such as
this.  This managerial power to establish a trust to pay leadership counsel has been
adopted by the Eighth Circuit and is reflected in the Manual for Complex
Litigation.  *Walitalo v. Iacocca*, 968 F.2d 741, 747 (8th Cir. 1992); Manual for
Complex Litigation (Fourth) § 20.312; *see also In re Diet Drugs*, 582 F.3d 524,
546-47 (3d Cir. 2009).  It is standard procedure to fund the trusts by ordering that
a percentage of all recoveries be contributed to the trust to compensate the
leadership group for its work providing a common benefit.  Manual for Complex
Litigation (Fourth) § 20.312 ("MDL judges generally issue orders directing that
defendants who settle MDL-related cases contribute a fixed percentage of the
settlement to a general fund to pay national counsel.").

---

[2]While the court's managerial power provides a basis for the court to assure fair
compensation to leadership counsel, the equitable common benefit doctrine is primarily
concerned with preventing unjust enrichment.  *See Vincent v. Hughes Air West, Inc.*, 557 F.2d
759 (9th Cir. 1977); *see also Trustees v. Greenough*, 105 U.S. 527 (1881).  Both sources of
authority provide the same result.  *See In re Diet Drugs*, 582 F.3d at 546-47.  Both are relevant
here, but because the MDL consolidation grants me the needed managerial authority, I base this
decision primarily on that managerial authority, although the equitable common benefit theory is
an alternate basis supporting my determination here.

C.     **Jurisdiction Over State Cases**

Plaintiffs' leadership group asks me to include the state court cases in this

order, so that defendants would be required to hold back and contribute a portion

of any settlements or judgments from those cases as well as from the MDL cases.[3]

As stated above, I do not have jurisdiction to do this.

The leading case on this question is *In re Showa Denko K.K. L-Tryptophan*

*Products Liability Litigation-II*, 953 F.2d 162 (4th Cir. 1992).  In that case the

Fourth Circuit Court of Appeals reviewed an MDL district court's order of a set-

aside that applied not only to the cases transferred to the MDL court, but also to

state cases, non-transferred federal cases, and unfiled claims that might be settled

and not litigated.  The Fourth Circuit found that the trial court did not have

jurisdiction to order the contributions from parties who were not before it.  The

court stated that the authority to consolidate cases before one MDL judge "is

merely procedural and does not expand the jurisdiction of the district court to

which the cases are transferred."  *Id*. at 166-67.  Most cases considering this issue

have reached the same conclusion.

---

[3]They also ask me to include any federal cases that have not been transferred here.  It is
my understanding that all federal cases either have been or will be transferred here, and that there
have been no settlements or judgments other than the judgments in the two bellwether cases
before me.  I therefore see no difficulty extending this order to all federal cases, whether they are
now before me or are transferred here in the future.

-9-

In *Hartland v. Alaska Airlines*, 544 F.2d 992, 1001 (9th Cir. 1976), the Ninth Circuit reversed a similar district court order, holding that the court "had not even a semblance of jurisdiction" to order non-parties to contribute to a common benefit fund. *Accord In re Zyprexa Products Liability Litigation*, 467 F. Supp. 2d 256 (E.D.N.Y. 2006); *In re Baycol Products Litigation*, No. MDL 1431, 2004 WL 190272 (D. Minn. Jan. 29, 2004); *In re Linerboard Antitrust Litigation*, 292 F. Supp. 2d 644, 663-64 (E.D. Pa. 2003). Some courts have entered orders covering state cases where there was an agreement by the state courts or parties to do so. *See In re Diet Drugs (Phentermine/ Fenfluramine/ Dexfenfluramine) Products Liability Litigation*, MDL No. 1203, 1999 WL 124414, at \*1 (E.D. Pa. Feb. 10, 1999); *In re Guidant Corp. Implantable Defibrillators Products Liability Litigation*, MDL. No. 05-1708, 2008 WL 682174 (D. Minn. March 7, 2008). Other courts have entered orders stating that they "expect" counsel with state cases to agree to their inclusion. *See In re Orthopedic Bone Screw Products Liability Litigation*, MDL No. 1014, 1996 WL 900349, at \*3 (E.D. Pa. June 17, 1996).

Leadership counsel assert in their briefs that "more recent decisions of MDL courts" have rejected the *Showa Denko* approach, but they cite only one case

-10-

doing so.[4]  The court in *In re Latex Gloves Products Liability Litigation*, 2003 US

DIST LEXIS 18118 (E.D.Pa. Sept. 5, 2003), found that state court cases were

properly subject to the common benefit fund assessment, because the lawyers in

those cases were using the discovery materials from the MDL.  Although reaching

the same result as *Latex Gloves* might be in the interest of justice, it is not allowed

by the law.  I have no jurisdiction over the state cases and I cannot order the

defendants to withhold amounts they may end up owing the state plaintiffs.

   As I stated at the beginning of this opinion, I reach this conclusion

reluctantly.  Requiring all the lawyers who have benefitted from the work of the

leadership team to contribute to their fees would be in the interests of justice, but it

is beyond my jurisdiction to order.  Several groups of plaintiffs' lawyers have

agreed with leadership counsel to do this with regard to their state as well as their

federal cases.  Those who have not agreed will be unjustly enriched by being able

to use the work of leadership counsel, unless their settlement agreements or the

state courts having jurisdiction over their cases rectify this unfair free-riding by

requiring their participation in the fund.

---

   [4]They also cite to a case where the MDL court capped contingent fees, *In re Vioxx
Products Liability Litigation*, 650 F. Supp. 2d 549 (E.D. La. 2009), but the court there appears to
have been granted the necessary authority by a settlement agreement.  In any event, although it
states that an MDL proceeding may be treated as a "quasi-class action," it does not support the
argument that I can act without jurisdiction.

### D.     **Substantial Benefit**

The objecting plaintiffs argue that a trust is inappropriate because they have

not received a substantial benefit from the leadership group's work.  This

argument is simply incorrect.  Substantial benefit should be determined with

respect to the plaintiffs as a whole, not with respect to individual plaintiffs.  *See In*

*re Diet Drugs*, 582 F.3d at 544 - 545; s*ee also In re Clearsky Shipping Corp.*, No.

Civ. A 96-4099, 2003 WL 1563820, at *1-4 (E. D. La. Feb. 26, 2003).  All of the

producer plaintiffs (including those whose cases are in state court) and all of the

non-producer plaintiffs have benefitted substantially, and will continue to do so,

from the work performed by plaintiffs' leadership counsel.

As set out above, the leadership group's work in discovery, motion practice,

and the bellwether trials has provided a foundation for all of the cases involved in

the litigation.  Evidence about what Bayer did in developing and distributing the

genetically modified rice is central to the proof on all the claims in this litigation.

This evidence was exclusively within Bayer's control, and the only realistic way

for the evidence to be developed was through the type of centralized discovery

that the leadership group conducted.  It would not have been possible for

thousands of plaintiffs to separately obtain discovery from Bayer, and that, of

course, is part of the reason the cases were combined in this MDL.  In addition to

-12-

coordinating and conducting all the discovery against Bayer, the leadership

lawyers have conducted two bellwether trials. Those trials essentially provided a

preview for all other plaintiffs of the trial testimony they might expect from the

Bayer witnesses and the types of cross-examination that their witnesses and clients

might expect at trial from Bayer's counsel. The trial preview, when combined

with the discovery, is a great benefit for all plaintiffs, whether they are producers,

non-producers, or ENPs.

The objectors' additional arguments on this issue do not diminish the

substantial benefit they have received from the leadership group's work or make

the trust inappropriate. Complaints that the leadership group's work was poor is

belied by the evidence that was presented at the two bellwether trials before me.

That evidence was well-organized and well-presented, and two juries found it

persuasive. These minor complaints about the organization or presentation of the

leadership group's work ignore the significant amount of time and effort the

leadership group spent in obtaining the documents and depositions in the first

place. Additionally, I reject the objectors' arguments that because they did some

of their own pre-trial preparation, they should not have to contribute. It was never

intended that the leadership group would perform all of the work for every

plaintiff in this litigation. Plaintiffs are substantially benefitted by "the mere

availability" of relevant discovery, even if an objecting plaintiff chooses not use it.

*In re Diet Drugs*, 582 F.3d at 544-45.  In this case, of course, the objectors have

actually used the leadership group's materials.

### E.     Reasonableness of the Amount of the Set-Aside

A majority of the producer and domestic non-producer plaintiffs, as well as

one ENP, agree that the amounts requested by the leadership group are reasonable.

The reasonableness of the amount of a contribution is a fact-dependent

determination.  *See In re Air Crash Disaster at Florida Everglades*, 549 F.2d at

1011-12; *Turner v. Murphy Oil*, 422 F. Supp. 2d 676, 680-82 (E.D. La. 2006).

Courts have ordered contributions between 9% and 17% in MDLs for common

benefit work.  *See In re Protegen Sling and Vesica System Products Litigation*,

MDL No. 1387, 2002 WL 31834446, at *1 (D. Md. Apr. 12, 2002) (9%); *Turner*,

422 F. Supp. 2d at 684 (12%); *In re Bone Screw*, 1996 WL 900349, at *3 (17%

contribution included  5% for costs and as much as 12% for fees, although the

court noted that it would reconsider the contribution amount for fees at a later

date).  The amounts suggested here by the leadership group are generally

reasonable, although I will reduce the contribution required in the European

non-producer cases.

The leadership group agrees that the non-producers have benefitted slightly

-14-

less than the producers, and this is why they have reasonably suggested a lower

percentage contribution from the non-producer cases.  All pools of plaintiffs need

not contribute to the trust equally.  *See In re Diet Drugs (Phentermine,*

*Fenfluramine, Dexfenfluramine) Products Liability*, MDL No. 1203, 2002 WL

32154197, at *6  (E.D.Pa. Oct. 3, 2002).  For example, the court in *Diet Drugs*

ordered that attorneys' fees be paid in different percentages from three different

trust funds.  *Id.*  Each trust was designated to pay only certain pools of plaintiffs,

such as plaintiffs who had taken diet drugs for less than six months versus

plaintiffs who had taken diet drugs for longer periods.  *Id.*  Other courts have

imposed different set-asides based on whether the pools of plaintiffs were in state

or federal courts, or based on when they joined the litigation.  *See In re Clearsky*

*Shipping*, No. Civ. A. 96-4099, 2003 WL 1563820, at *1-4 (E.D.La. Feb. 26,

2003).  Because the Eurpean non-producers' claims are different, however, I will

order a lower contribution for their cases from that of the other non-producers.

This order divides the cases into three pools – producers, non-producers, and

ENPs – instead of two pools as suggested in the motion.  The expense set aside for

each group will remain at 3% as requested; the fees set aside will be 8% for

producer cases, 7% for non-producer cases, and 6% for European non-producer

cases.  The totals will thus be 11%, 10%, and 9%, respectively.

These set aside amounts appear to provide a large enough fund to compensate the leadership group (or other plaintiffs' lawyers who have provided a substantial benefit to clients other than their own) for their common-benefit work. Additionally, I do not believe that the lower contribution amount ordered for the ENPs will have a significant effect on the trust's ability to compensate the leadership group.

The order establishing a contribution amount is not an award of attorneys' fees and, as such, it is unnecessary at this time to determine whether the leadership group has earned the entirety of the proposed contribution. *See Turner*, 422 F. Supp. 2d at 680-81. Indeed, the order I enter allows any plaintiff's attorney to petition for a distribution, and the amounts of any distributions will be made at a later time.

**F.     Prematurity**

The objectors also contest the timing of the trust, claiming that it is premature and that it should not be established until after an opportunity for discovery and an accounting. I find that the timing of this motion is entirely appropriate. *See In re Zyprexa*, 467 F. Supp. 2d at 266; *Turner*, 422 F.Supp.2d at 680 ("it has been a common practice in the federal courts to impose set-asides in the early stages of complex litigation in order to preserve common-benefit funds

-16-

for later distribution."); Manual for Complex Litigation (Fourth) § 14.215 ("Early

in the litigation the court should . . . establish the arrangements for the [leadership

group's] compensation, including setting up a fund to which designated parties

should contribute in specified proportions"). The court in *Zyprexa* noted that,

"[e]ven if no common benefit compensation had yet been earned, there would be a

need to put a holdback method into place promptly." *Id.* Here, the leadership

group has already conferred a substantial benefit upon all of the other plaintiffs

and plaintiffs have already obtained favorable verdicts in two bellwether trials. It

is entirely appropriate to establish a trust at this time, and no accounting is now

required. Before any distributions are made from the fund, the court will provide

an opportunity for all parties to be heard and to seek appropriate information.

### G.   **Penalty**

Some of the objectors characterize the contribution requirement as a "tax,"

an "assessment," a "levy," or a "penalty" and claim that the contribution

encourages state court filing and gives plaintiffs an improper incentive to hire

leadership group attorneys as their personal counsel. Other courts have explicitly

rejected these arguments. *See Turner*, 422 F. Supp. 2d at 681; *In re Linerboard*,

292 F. Supp. 2d at 662-63. I agree that this is not a penalty and that it does not

burden the plaintiffs' freedom to chose their own counsel. As demonstrated by the

agreement of so many plaintiffs' lawyers, there is no shortage of counsel who will

agree to represent these plaintiffs even with the set-aside.

### H.    Bayer's Additional Objections

The establishment of the trust fund will not have a financial impact on

Bayer.  Instead, Bayer will be required to deposit a portion of any award or

settlement into the fund.  Bayer argues that establishing the trust now will

encourage filing in state court, instead of federal court.  The plaintiffs who can do

so have already sought to proceed in state court, and Bayer has removed all the

cases that are removable.  I therefore do not think this is a reason to delay

establishment of the trust.  I am concerned, however, that more plaintiffs might

attempt to dismiss their federal cases without prejudice so they could refile in state

court, but I believe my managerial authority over the cases can prevent any

prejudice from this.  In the past, I had imposed conditions on certain dismissals

without prejudice, at defendants' request, although I have not recently done so.

Because my case management orders have prevented the defendants from filing

answers in most of the individual cases, the provisions of Rule 41(a)(1)(A)(i),

Federal Rules of Civil Procedure, which normally allow plaintiffs to dismiss

without prejudice as of right under certain circumstances, do not apply to the cases

-18-

in this MDL.[5]  I will not authorize any further unconditional dismissals without prejudice unless they are agreed to by the defendants in the particular case.[6]

Finally, I am not concerned that the establishment of the common benefit fund will hinder settlement.  Instead, all parties will know what is expected, and that certainty should assist, not hinder, settlement negotiations.

For the reasons stated above:

**IT IS HEREBY ORDERED** that the leadership group's motion to establish a common benefit fund [#1458] is **GRANTED** to the extent set forth herein.

**IT IS FURTHER ORDERED** that motions for joinder of the leadership group's motion [## 1511, 1513, 1514, 1515, 1517, 1523, 1526, 1534, 1536, 1538, 2507] are **GRANTED**.

**IT IS FURTHER ORDERED** that the motion of the plaintiffs represented by Patrick Pendley to withdraw their objection to the establishment of the common benefit fund [#2507] is **GRANTED**.

---

[5]Arguably, these provisions do not apply in any event, because the defendants' earlier motions for summary judgment on jurisdictional and other grounds applied to all cases.

[6]Certain Notices are pending at this time, and I will direct the Clerk of Court to convert those to motions.

-19-

**IT IS FURTHER ORDERED** that:

1.      Lead Counsel shall establish a common benefit trust fund at a national bank in the name of and to be maintained by Lead Counsel, the purpose of which will be to hold funds as provided in this Order to compensate attorneys for services rendered for the plaintiffs' common benefit and to reimburse them for expenses incurred in conjunction with those common benefit services.

2.      Defendants shall hold back and set aside for placement into Lead Counsel's common benefit trust fund the following amounts related to each federal genetically modified rice case, and related to each state case where either the parties agree or the state court having jurisdiction orders:

(i)      8% of any gross recovery obtained by producer plaintiffs, by way of judgment, settlement, or otherwise, for attorneys' fees;

(ii)      7% of any gross recovery obtained by non-producer plaintiffs, except for the ENPs, by way of judgment, settlement, or otherwise, for attorneys' fees;

(iii)      6% of any gross recovery obtained by European non-producer plaintiffs, except for Rickmers, by way of judgment, settlement, or otherwise, for attorneys' fees; and

(iv)      an additional 3% of any gross recovery obtained by any plaintiff included above, except for Rickmers, by way of judgment, settlement, or

-20-

otherwise, for common benefit costs and expenses incurred by attorneys providing

a common benefit.

3.      The requirements of paragraph 2 shall apply to federal cases

regardless of whether a plaintiff's case is disposed of during the time it is on the

docket of the this court or following remand to the transferee court or transfer to

another federal district court.  The obligation shall follow the case to its final

disposition including a court having jurisdiction in bankruptcy.

4.      Defendants may make contributions to the common benefit trust fund

established in paragraph 1 of any amounts held back and set aside from

settlements or judgments arising from any state-court case related to genetically

modified rice if the plaintiffs' counsel agree to participate in the common benefit

fund, or if a state court orders participation.  I encourage all plaintiffs' counsel

having cases in both this federal court and in state courts to agree to participate in

the fund, and I encourage defendants to seek the state court plaintiffs' agreement

as part of any settlements or to seek orders for participation from the appropriate

state courts.  Any funds from state court settlements or judgments will be

distributed from the fund on the same basis as those from the federal cases.

5.      No disbursement shall be made from the aforesaid common benefit

trust fund established by Lead Counsel and maintained by them and in their

names, as provided in paragraph 1 of this Order and funded as provided in

paragraphs 2, 3 and 4 of this Order, except upon further order of this court after a

hearing upon notice to all parties.  At the appropriate time, any plaintiffs' counsel

(whether part of the leadership group or not) may petition for distribution of funds

if that counsel believes he or she has provided a common benefit to plaintiffs other

than his or her own clients.

      6.     At such time as the trust account contains balances that are not

necessary to be retained for the payment of fees and costs, the Court will, subject

to applicable provisions of law and following a hearing, make refunds on an

equitable basis, or if such balances are of small amounts, enter such orders

concerning the disposition of such funds as are appropriate under the law.

     **IT IS FURTHER ORDERED** that from this point forward any plaintiffs'

claims may only be dismissed without prejudice by stipulation under Rule

41(a)(1)(A)(ii), Fed. R. Civ. P., or by court order on motion under Rule 41(a)(2),

Fed. R. Civ. P.  If any plaintiff attempts to file a notice of dismissal without

prejudice under Rule 41(a)(1)(A)(i), the Clerk of Court will docket that as a

motion to dismiss without prejudice, and any objecting defendant must file its

opposition (including any  request that conditions be imposed on dismissals)

within seven days thereafter.  If no objections are filed within seven days, the

court will grant the motion.

**IT IS FURTHER ORDERED** that the Clerk of Court shall change the

following pending notices of voluntary dismissal to motions for dismissals without

prejudice, and defendants shall file any memorandum in opposition or request that

the dismissal be entered on conditions, no later than **Friday, March 5, 2010**:

*LKZ, Inc. v. Bayer CropScience, et al.*, 4:08CV1210, Notice of Dismissal

filed 2/18/10, docket entry # 10 (docket entry # 2556 in 4:06MD1811).

*Zachary Northcutt Farms v. Bayer CropScience, et al.*, 4:08CV1211, Notice

of Dismissal filed 2/18/10, docket entry # 7 (docket entry # 2557 in 4:06MD1811).


_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE


Dated this 24th day of February, 2010.


-23-

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE GENETICALLY MODIFIED | ) | 4:06MD1811 CDP |
| RICE LITIGATION | ) | ALL CASES |

## MEMORANDUM AND ORDER

Plaintiffs' leadership group has filed a motion to compel Riceland Foods,

Inc. to contribute a portion of any recovery it receives in a similar state court case

to the common benefit fund.  Riceland argues that this Court does not have

jurisdiction to order it to contribute to the fund in its state court case.  Because I

agree that this Court lacks jurisdiction over the state cases, I will deny the

leadership group's motion.

Riceland is a party to this multidistrict litigation as part of the case *Riceland*

*Foods, Inc. v. Bayer AG, et al.*, 4:09CV433CDP.  It is undisputed that, with

respect to any recovery Riceland obtains in its MDL case, Riceland is subject to

the terms of my order dated February 24, 2010 establishing a common benefit trust

fund.  The leadership group's motion, however, does not seek to compel Riceland

to abide by the terms of the common benefit order in its MDL case.  Instead, the

leadership group seeks to compel Riceland to contribute a portion of any recovery

obtained in an Arkansas state court case, *Meins v. Bayer AG, et al.*, CV-2008-108,

to the common benefit fund.  Riceland is a defendant in the Arkansas case with



Case 5:13-cv-00326-BSM   Document 5   Filed 10/18/13   Page 86 of 96
Case: 4:06-md-01811-CDP   Document #: 4033   Filed: 02/11/11   Page: 2 of 3 PageID #:
103721

cross-claims against Bayer, although Riceland's claims against Bayer in its MDL

case are essentially the same as the claims it asserts against Bayer in its Arkansas

case.

The common benefit order in this MDL is limited to federal cases. *See In re*

*Genetically Modified Rice Litigation*, 4:06MD1811, 2010 WL 716190 (E.D. Mo.

Feb. 24, 2010).  As stated in that order, "I have no jurisdiction over the state

cases." *Id.* at *5.  The leadership group has provided no new authority to the

contrary.  Simply because this Court has jurisdiction over an attorney, a defendant,

or a plaintiff in one case does not mean that it has jurisdiction over them in their

state court cases, even if they assert essentially the same claims. *See In re Showa*

*Denko K.K. L-Tryptophan Products Liability Litigation-I*, 953 F.2d 162, 166-67

(4th Cir.1992) (stating that an MDL court's authority "is merely procedural and

does not expand the jurisdiction of the district court to which the cases are

transferred."); *Hartland v. Alaska Airlines*, 544 F.2d 992, 1001 (9th Cir.1976).

The leadership group, however, is correct that this ruling creates a risk that

Riceland will be unjustly enriched.  In the original common benefit order, I found

that Riceland had received a substantial benefit from the leadership group's work.

Riceland did not object to this conclusion at the time and it remains my opinion

that Riceland has, in fact, received a substantial benefit from the leadership

-2-

Case 5:13-cv-00326-BSM   Document 5   Filed 10/18/13   Page 87 of 96
Case: 4:06-md-01811-CDP   Document #: 4033   Filed: 02/11/11   Page: 3 of 3 PageID #:
103722

group's work in this MDL. Despite this, Riceland refuses to voluntarily agree to contribute to the fund, as many parties in this litigation have done, and instead will not contribute to the fund unless ordered to do so. Although, this is unfortunate, it is beyond my authority to order Riceland to contribute to the fund in its Arkansas case.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiffs' leadership group's motion to enforce the common benefit fund order [#3904] is DENIED.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 11th day of February, 2011.

-3-

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE GENETICALLY MODIFIED | ) | 4:06MD1811 CDP |
| RICE LITIGATION | ) | ALL CASES |

### ORDER ADOPTING THE REPORT AND RECOMMENDATION OF THE SPECIAL MASTER FOR THE ALLOCATION AND DISTRIBUTION OF COMMON BENEFIT FEES AND EXPENSES

On September 4, 2012, plaintiffs' co-lead counsel filed a motion for

allocation and distribution of common benefit fees and expenses in this case.

Pursuant to Federal Rule of Civil Procedure 53, I appointed retired Judge Stephen

N. Limbaugh, Sr. as Special Master for consideration of that motion and its

corresponding objections, as well as motions from other plaintiffs' counsel for

allocation and distribution of common benefit fees and expenses.

On November 2, 2012, Special Master Limbaugh issued a Report and

Recommendation relating to the protocols, processes, allocation, and distribution

of common benefit fees and expenses.  Only one group of plaintiffs' counsel –

collectively referred to as "the Phipps Group" – filed objections to that Report and

Recommendation.  Plaintiffs' co-lead counsel has responded to those objections.

I have conducted a *de novo* review of all matters relevant to the motions,

including reviewing all of the parties' arguments and supporting evidence

(consisting of hundreds of pages of briefs and more than a thousand pages of



exhibits). After careful consideration, I will adopt and sustain the thorough reasoning of Special Master Limbaugh for the reasons that follow.

## Discussion

My review of Special Master Limbaugh's Report and Recommendation, along with the parties' briefs and the evidence presented to the Special Master, demonstrates that he carefully analyzed and considered all of the information presented to him. He conducted thorough legal research into the relevant issues, ane he personally met with the attorneys involved in this dispute to fully understand their positions. His Report and Recommendation accurately summarizes the arguments and evidence and reaches the correct legal conclusions. As the Phipps Group was the only plaintiffs' counsel to file objections to the Report and Recommendation, I will address its objections.

### *Panel of Special Masters:*

The Phipps Group renews its request for appointment of a panel of special masters, rather than the appointment of Judge Limbaugh, Sr. as the only special master. The basis for this renewed objection is an appearance of bias and unfair advantage based on Judge Limbaugh, Sr.'s geographic proximity to plaintiffs' co-lead counsel, as well as his rejection of the Phipps Group's requests and recommendation that plaintiffs' co-lead counsel's requests be granted in full.

As I decided before, appointment of a panel of special masters is unnecessary and inefficient. Judge Limbaugh, Sr. has significant experience with the various issues presented in this complex case, and the Phipps Group has not presented any factual basis for its contentions that Judge Limbaugh, Sr. has demonstrated a geographical bias. As will be discussed further, Judge Limbaugh, Sr. rejected the Phipps Group's arguments because they lacked merit, not because of an alleged geographic preference. Again, I will deny the Phipps Group's request for appointment of a panel of special masters.

*Reasonableness of Fees and Hours Claimed by Common Benefit Attorneys:*

The Phipps Group objects to the amounts claimed by common benefit attorneys, objecting to both the total percentage of funds claimed and the hours and rates reported. The Phipps Group also presented a chart laying out various other, more specific arguments regarding these claims for fees and expenses. I have considered all of the arguments raised, but, in the interests of brevity, will discuss in detail only those I consider to be the most significant. Contrary to the Phipps Group's assertions, neither I nor the Special Master is required to discuss in an opinion everything we have considered.

As to the percentage distribution sought by common benefit attorneys, the Phipps Group argues that the total amount of settlement proceeds that should be

- 3 -

considered is approximately $577 million, as opposed to the $918 million total set forth by plaintiffs' co-lead counsel. The basis for the Phipps Group's argument is that the amount recovered in state-court proceedings should not be considered in the total amount of settlement proceeds because I did not order the defendants to hold back funds from those recoveries. But the only reason I did not order common-benefit contributions from the state-court proceedings was because I lacked jurisdiction to do so. Those cases, including the cases in which the Phipps Group was counsel, benefitted greatly from the work performed by the common benefit attorneys. It is proper to consider the whole amount in determining the reasonableness of the percentage of the common benefit fees and expenses sought by common benefit attorneys.

The amount sought by plaintiffs' co-lead counsel in their briefs is a maximum of $72 million, which constitutes 7.8% of the total amount of settlement proceeds, including state-court recoveries: $918 million. This percentage is reasonable based on case law and my own analysis of the complexity and amount of work performed by common benefit attorneys in this case.

Regarding the hours and hourly rates reported by common benefit attorneys, the Phipps Group argues that the number of hours is inflated and the hourly rates are too high. I agree with co-lead counsel when they point out that the Phipps

Group misrepresents the facts about the hours claimed per week in its objections.
Special Master Limbaugh engaged in extensive analysis of the attorneys'
declarations of hours worked, as well as supporting documentation, before
determining that the number of hours claimed was reasonable.  He examined the
declaration of Lead Counsel Downing and Levitt, which explained the process they
undertook to calculate the acceptable amount of hours for each firm.  I have
similarly reviewed all the evidence, and I agree with Special Master Limbaugh that
it is appropriate to rely on the sworn declarations of counsel.  The procedure used
by plaintiffs' co-lead counsel is acceptable, and I find that the number of hours
charged by the common benefit attorneys, as set out in the various briefs and
exhibits, is fair and reasonable.

As to the hourly rates charged by the common benefit attorneys, each
attorney submitted a sworn declaration that the hourly rate charged was
customarily charged in his or her region by attorneys and legal professionals of
similar qualifications and experience.  They also submitted declarations of
independent, prominent attorneys from their areas, who agree that those hourly
rates are reasonable.  Indeed, the Phipps Group attorneys submitted comparable or
higher hourly rates than those charged by some other firms in the same area.
Therefore, I reject these arguments by the Phipps Group and find that the hours

- 5 -

worked and hourly rates charged are reasonable.

*Request for Discovery:*

Along with its arguments regarding the hours worked and hourly rates charged, the Phipps Group filed a motion to compel discovery into the individual billing records of the common benefit attorneys. I will deny this request. As set out above, an in-depth examination of individual time sheets is not necessary given the sworn declarations of plaintiffs' co-lead counsel regarding the procedures used in analyzing those time sheets. The Phipps Group has provided no reason that this court may not rely on those attorneys' sworn representations regarding that evidence, and discovery is not necessary. I will deny the motion to compel.

*Phipps' Group's Request for Fees and Expenses:*

The Phipps Group also seeks to receive a distribution from the common benefit fund. Special Master Limbaugh recommended denial of this request. As he points out, the Phipps Group did not coordinate with the plaintiffs' co-lead counsel at any time during this litigation. I conclude that the work done by the Phipps Group for its own clients did not benefit the rest of the plaintiffs, while the work performed by the common benefit attorneys definitely benefitted the Phipps Group and its clients. It is not an exaggeration to say that the Phipps Group has been unjustly enriched by the work of the common-benefit attorneys. And at times

- 6 -

the Phipps Group's conduct may have actually interfered with the progress of the case and the settlement. As co-lead counsel point out, I was twice required to consider requests for sanctions when the Phipps Group improperly attempted to solicit as clients plaintiffs who were already represented by other counsel. I will deny the Phipps Group's motion for allocation and distribution of common benefit fees and expenses.

*Failure to Consider All Objections Individually:*

Finally, the Phipps Group argues that Special Master Limbaugh erred in failing to consider all of the arguments presented by the Phipps Group. This argument has no merit. Special Master Limbaugh was not required to discuss in his report every point made by the Phipps Group, and his failure to discuss every point does not mean that he did not consider each argument. The Phipps Group had ample opportunity to present its arguments in the form of objections to the plaintiffs' co-lead counsel's motion and in its own motions. It also participated in meetings with Special Master Limbaugh in which it was able to further explain its arguments. In any event, I have conducted *de novo* review, and I find no merit to any of the arguments raised by the Phipps Group.

Because I find that none of the objections presented by the Phipps Group has merit, and because I conclude that the analysis of Special Master Limbaugh was

correct and need not be repeated by me, I will adopt the findings in Special Master

Limbaugh's Report and Recommendation.  Specifically, I conclude that the

protocols and processes used by plaintiffs' co-lead counsel are fair and reasonable.

The attorneys' fees and expenses set forth in Exhibit B-1 to Special Master

Limbaugh's Report and Recommendation – along with the enhancements

contained in Exhibit F – are also fair and reasonable.

Accordingly,

**IT IS HEREBY ORDERED** that the objections of the Phipps Group

[#4922] are overruled, and the Report and Recommendation of Special Master

Stephen N. Limbaugh, Sr. [#4908] is **SUSTAINED, ADOPTED, and**

**INCORPORATED** herein.

**IT IS FURTHER ORDERED** that plaintiffs' co-lead counsel's motion for

allocation and distribution of common benefit fees and expenses [#4674], as

modified by Exhibit B-1 to Special Master Limbaugh's Report and

Recommendation [#4908-1, at 4], is GRANTED, and these fees and expenses

should first be paid from the Common Benefit Fund.

**IT IS FURTHER ORDERED** that the firm Hare, Wynn, Newell & Newton

should next be paid an additional $1,355,594.74 from the Common Benefit Fund.

**IT IS FURTHER ORDERED** that any remaining Common Benefit Fund

- 8 -

amounts and any additional funds that are received, up to a total of $72 million, should be paid to the six firms contained within and as set forth in Exhibit F to Special Master Limbaugh's Report and Recommendation [#4908-1, at 17]. If the total common benefit fund amounts received exceeds $72 million, plaintiffs' co-lead counsel shall approach the Court with a recommendation as to the allocation of those additional funds.

**IT IS FURTHER ORDERED** that the motion for allocation and distribution filed by the Deacon Law Firm [#4834] is DENIED AS MOOT.

**IT IS FURTHER ORDERED** that the motions for allocation and/or equitable modification of Farmers Rice Milling Company, Inc. [#4831] and of Beaumont Rice Mills, Inc. [#4833] are DENIED.

**IT IS FURTHER ORDERED** that the Phipps Group's motion for allocation and distribution of common benefit fees and expenses [#4838] and motion to compel discovery [#4837] are DENIED.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 6th day of December, 2012.

- 9 -